Timothy L. Alger (Cal. Bar No. 160303)
tim@emergelawgroup.com
EMERGE LAW GROUP
100 Spectrum Center Drive, Suite 900
Irvine, CA 92618
Tel: 949-936-2610

Cole Mackey (TX Bar No. 24062865 (*Pro Hac Vice* to be filed))
cole@mackey.legal
MACKEY LAW FIRM PLLC
9525 Katy Freeway, Suite 260
Houston, TX 77024
Tel: 346.954.8287

Attorneys for Defendant Coastal Harvest, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENE POOL TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COASTAL HARVEST, LLC,<br><br>Defendant. | Case No.: 5:21-cv-01328-JWH-SHK<br><br>DEFENDANT'S ANSWER TO COMPLAINT AND COUNTERCLAIMS<br><br>DEMAND FOR JURY TRIAL |

## DEFENDANT'S ANSWER TO COMPLAINT

Defendant Coastal Harvest, LLC ("CHL" or "Defendant") answers the Complaint of Plaintiff Gene Pool Technologies, Inc. ("GPT" or "Plaintiff") as follows:

## NATURE OF THE ACTION

1. Answering paragraph 1, Defendant admits that GPT's Complaint purports to initiate a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

## THE PARTIES

2. Answering paragraph 2, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2 and therefore denies them.

3. Answering paragraph 3, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3 and therefore denies them.

4. Answering paragraph 4, Defendant admits the allegations in paragraph 4.

5. Answering paragraph 5, Defendant is in the business of manufacturing, distributing and selling products derived from cannabis. Defendant denies any other allegations in paragraph 5.

6. Answering paragraph 6, Defendant admits that it has used a device sold by ExtractionTek Solutions and known by some as the Modular Extraction Platform 30 ("MeP 30"). Defendant denies having infringed any valid claim of any patent owned by GPT. Defendant denies any other allegations in paragraph 6.

## JURISDICTION AND VENUE

7. Answering paragraph 7, Defendant admits that this Court has subject matter jurisdiction over the action. Defendant denies any other allegations in paragraph 7.

8. Answering paragraph 8, Defendant admits that this Court has personal jurisdiction over Defendant in this action. Defendant admits that it has a place of business in California. Defendant denies any other allegations in paragraph 8.

9. Answering paragraph 9, Defendant admits that venue is proper in this District. Defendant admits that it has a place of business in this District. Defendant denies any other allegations in paragraph 9.

## GENE POOL'S ASSERTED PATENTS

10. Answering paragraph 10, Defendant admits that the United States Patent and Trademark Office issued U.S. Patent No. 9,144,751 ("the '751 patent")—titled "Systems for Extracting Solute from a Source Material"—on September 29, 2015. Defendant admits that the '751 patent identifies Jason Wasserman, Jess Ordower, and Samuel Decker as inventors. Defendant admits that Exhibit 1 to the Complaint purports to be a copy of the '751 patent. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 10 and therefore denies them.

11. Answering paragraph 11, Defendant admits that the United States Patent and Trademark Office issued U.S. Patent No. 9,145,532 ("the '532 patent")—titled "Methods for Extracting Solute from a Source Material"—on September 29, 2015. Defendant admits that the '532 patent identifies Jason Wasserman, Jess Ordower, and Samuel Decker as inventors. Defendant admits that Exhibit 2 to the Complaint purports to be a copy of the '532 patent. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 11 and therefore denies them.

12. Answering paragraph 12, Defendant admits that the United States Patent and Trademark Office issued U.S. Patent No. 9,587,203 ("the '203

patent")—titled "Methods for Extracting Solute from a Source Material"—on March 7, 2017. Defendant admits that the '203 patent identifies Jason Wasserman and Jess Ordower as inventors. Defendant admits that Exhibit 3 to the Complaint purports to be a copy of the '203 patent. Defendant denies that the '203 patent identifies Samuel Decker as an inventor. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 12 and therefore denies them.

13. Answering paragraph 13, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13 and therefore denies them.

14. Answering paragraph 14, Defendant denies the allegations in paragraph 14.

## COUNT I

## Alleged Infringement of the '751 Patent

15. Answering paragraph 15, Defendant repeats and realleges each and every response to the allegations of preceding paragraphs as though fully set forth herein.

16. Answering paragraph 16, Defendant denies the allegations in paragraph 16.

17. Answering paragraph 17, Defendant denies the allegations in paragraph 17.

18. Answering paragraph 18, Defendant admits that the Court has not yet construed the meaning of any claims or terms in the '751 patent. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 and therefore denies them.

19. Answering paragraph 19, Defendant denies the allegations in paragraph 19.

20. Answering paragraph 20, Defendant denies the allegations in paragraph 20.

21. Answering paragraph 21, Defendant denies the allegations in paragraph 21.

22. Answering paragraph 22, Defendant denies the allegations in paragraph 22.

23. Answering paragraph 23, Defendant admits that it has received at least one letter from someone purporting to represent GPT; otherwise, denied.

24. Answering paragraph 24, Defendant denies the allegations in paragraph 24.

25. Answering paragraph 25, Defendant denies the allegations in paragraph 25.

## COUNT II

## Alleged Infringement of the ‘532 Patent

26. Answering paragraph 26, Defendant repeats and realleges each and every response to the allegations of the preceding paragraphs as though fully set forth herein.

27. Answering paragraph 27, Defendant denies the allegations in paragraph 27.

28. Answering paragraph 28, Defendant denies the allegations in paragraph 28.

29. Answering paragraph 29, Defendant admits that the Court has not yet construed the meaning of any claims or terms in the ‘532 patent. Defendant lacks

knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29 and therefore denies them.

30. Answering paragraph 30, Defendant denies the allegations in paragraph 30.

31. Answering paragraph 31, Defendant denies the allegations in paragraph 31.

32. Answering paragraph 32, Defendant denies the allegations in paragraph 32.

33. Answering paragraph 33, Defendant denies the allegations in paragraph 33.

34. Answering paragraph 34, Defendant admits that it has received at least one letter from someone purporting to represent GPT; otherwise, denied.

35. Answering paragraph 35, Defendant denies the allegations in paragraph 35.

36. Answering paragraph 36, Defendant denies the allegations in paragraph 36.

## COUNT III

## Alleged Infringement of the '203 Patent

37. Answering paragraph 37, Defendant repeats and realleges each and every response to the allegations of the preceding paragraphs as though fully set forth herein.

38. Answering paragraph 38, Defendant denies the allegations in paragraph 38.

39. Answering paragraph 39, Defendant denies the allegations in paragraph 39.

40. Answering paragraph 40, Defendant admits that the Court has not yet construed the meaning of any claims or terms in the '203 patent. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40 and therefore denies them.

41. Answering paragraph 41, Defendant denies the allegations in paragraph 41.

42. Answering paragraph 42, Defendant denies the allegations in paragraph 42.

43. Answering paragraph 43, Defendant denies the allegations in paragraph 43.

44. Answering paragraph 44, Defendant denies the allegations in paragraph 44.

45. Answering paragraph 45, Defendant admits that it has received at least one letter from someone purporting to represent GPT; otherwise, denied.

46. Answering paragraph 46, Defendant denies the allegations in paragraph 46.

47. Answering paragraph 47, Defendant denies the allegations in paragraph 47.

## DENIAL OF PLAINTIFF'S PRAYER FOR RELIEF

Defendant respectfully requests that the Court deny Plaintiff's prayer for relief as stated in the Complaint.

## DEFENDANT'S DEFENSES

Further answering the Complaint, Defendant asserts the following defenses without any admission as to the burden of proof. Defendant reserves all rights to

amend this Answer with additional defenses or otherwise as further information is obtained.

**FIRST DEFENSE**

**Failure to State a Claim**

The Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

**Non-Infringement**

Defendant does not infringe the asserted claims of the asserted patents.

**THIRD DEFENSE**

**Invalidity**

The asserted claims of the asserted patents are invalid for failure to meet the requirements of the Patent Act, 35 U.S.C. sec. 1, et seq., including but not limited to one or more of 35 U.S.C. §§ 102, 103, 112 and a combination thereof .

**FOURTH DEFENSE**

**Prosecution History Estoppel**

Plaintiff's claims are barred by the doctrine of prosecution history estoppel based on amendments, statements, admissions, omissions, representations, disclaimers, and/or disavowals made during prosecution of the asserted patents.

**FIFTH DEFENSE**

**Lack of Standing**

Plaintiff's claims are barred, in whole or in part, due to lack of standing.

## SIXTH DEFENSE

## Necessary Parties

Plaintiff's claims are barred on the grounds of defect or misjoinder of or failure to join necessary parties.

## SEVENTH DEFENSE

## Limitation on Damages and Costs

Plaintiff's claim for damages is statutorily limited by 35 U.S.C. §§ 286, 287 and/or 288.

## EIGHTH DEFENSE

## Laches

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## NINTH DEFENSE

## Inequitable Conduct

Plaintiff's claims are barred, in whole or in part, by inequitable conduct by those with a duty of candor before the United States Patent and Trademark Office.

## DEFENDANT'S COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13, Defendant hereby counterclaims against Plaintiff and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff filed this action against Defendant seeking damages for alleged infringement of United States Patent No. 9,144,751 ("the '751 patent");

United States Patent No. 9,145,532 (“the ‘532 patent”); and United States Patent No. 9,587,203 (“the ‘203 patent”) (collectively “the asserted patents”).

## THE PARTIES

2. Based on the allegations in paragraph 2 of the Complaint, Plaintiff Gene Pool Technologies, Inc. ("GPT") is a Colorado corporation with its principal place of business in Boulder, Colorado, and a mailing address of 1601 29th Street, Suite 1292, #1052, Boulder, CO 80301.

3. Defendant Coastal Harvest, LLC (“CHL”) is a California company with its principal place of business at 68-956 Perez Road, Suite D, Cathedral City, CA 92234.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to at least 28 U.S.C. §§ 1331 and 1338(a).

5. At least because Plaintiff brought this action, Plaintiff has consented to this Court’s personal jurisdiction over Plaintiff.

6. Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400(b).

## GENERAL ALLEGATIONS

7. The Complaint (Doc. 1) in this action does not allege that any product has ever been marked with the ‘751 patent number.

8. The Complaint (Doc. 1) in this action does not allege that CHL was notified of the ‘751 patent before February 2021.

9. GPT has no basis to claim damages for CHL’s alleged infringement of the ‘751 patent before February 2021.

10. The Complaint (Doc. 1) in this action does not allege that any product has ever been marked with the '532 patent number.

11. The Complaint (Doc. 1) in this action does not allege that CHL was notified of the '532 patent before February 2021.

12. GPT has no basis to claim damages for CHL's alleged infringement of the '532 patent before February 2021.

13. The Complaint (Doc. 1) in this action does not allege that any product has ever been marked with the '203 patent number.

14. The Complaint (Doc. 1) in this action does not allege that CHL was notified of the '203 patent before February 2021.

15. GPT has no basis to claim damages for CHL's alleged infringement of the '203 patent before February 2021.

16. The '203 patent lists "Samual Decker" as an inventor.

17. GPT does not have an assignment of the '203 patent from "Samual Decker."

18. "Samual Decker" is a necessary party to any assertion of the '203 patent.

## FIRST CAUSE OF ACTION

## Declaratory Judgment of Non-Infringement of the '751 Patent

19. CHL repeats and incorporates by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

20. GPT asserts claim 13 of the '751 patent against CHL's ExtractionTek Solutions Modular Extraction Platform 30 ("MeP 30").

21. Other than claim 13, GPT has not asserted any other claim of the '751 patent against CHL.

22. Other than the MeP 30, GPT has not asserted any claim of the '751 patent against any other apparatus of CHL.

23. Claim 13 of the '751 patent recites, among other things, "a canister interface configured to removably support the canister in fluid communication with the solvent source container and the extract container and configured to detachably support a supplemental canister in fluid communication with the solvent source container and extract container."

24. Any apparatus that does not include at least "a canister interface configured to removably support the canister in fluid communication with the solvent source container and the extract container and configured to detachably support a supplemental canister in fluid communication with the solvent source container and extract container" does not infringe claim 13 of the '751 patent.

25. CHL's MeP 30 is missing at least "a canister interface configured to removably support the canister in fluid communication with the solvent source container and the extract container and configured to detachably support a supplemental canister in fluid communication with the solvent source container and extract container."

26. CHL does not infringe the '751 patent.

## **SECOND CAUSE OF ACTION**

### **Declaratory Judgment of Invalidity of the '751 Patent**

27. CHL repeats and incorporates by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

28. The '751 patent issued from an application filed on November 4, 2013.

29. The application that published as U.S. Patent Application Publication No. 20140193303 ("the '303 application") was filed on January 4, 2013.

30. The ‘303 application is prior art to the ‘751 patent.

31. The ‘303 application is not listed on the face of the ‘751 patent.

32. The ‘303 application is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘751 patent.

33. The ‘303 application was not considered by the Examiner during prosecution of the application that matured into the ‘751 patent.

34. The ‘303 application is entitled “Apparatus for Extracting Oil From Oil-Bearing Plant Material.”

35. The ‘303 application shows a “system for extracting solute from a source material,” as recited in claim 13 of the ‘751 patent.

36. The ‘303 application shows “a solvent source container configured to store a solvent,” as recited in claim 13 of the ‘751 patent.

37. Figure 1 of the ‘303 application is reproduced below with the solvent source container highlighted in yellow.




**FIG. 1**

38. The '303 application shows "a canister detachably connected in fluid communication with the solvent source container and configured to store the source material in its interior, the canister configured to receive solvent from the solvent source container in its interior to produce an extract solution including the solvent and the solute extracted from the source material," as recited in claim 13 of the '751 patent.

39. Figure 1 of the '303 application is reproduced below with the canister highlighted in green.




FIG. 1

40. The '303 application shows "an extract container in fluid communication with the canister, the extract container being configured to receive the extract solution from the canister," as recited in claim 13 of the '751 patent.

41. Figure 1 of the '303 application is reproduced below with the extract container highlighted in blue.




**FIG. 1**

42. The '303 application shows "an extract container heating element thermally coupled with the extract container, the heating element configured to heat the extract solution received in the extract container to a distilling temperature, the distilling temperature being greater than or equal to a boiling point of the solvent and below a boiling point of the solute to produce a post-extraction portion of the solvent in the extract container," as recited in claim 13 of the '751 patent.

43. Figure 1 of the '303 application is reproduced below with the extract container heating element highlighted in fuchsia.




FIG. 1

44. The '303 application shows "a canister interface configured to removably support the canister in fluid communication with the solvent source container and the extract container," as recited in claim 13 of the '751 patent.

45. Figure 1 of the '303 application is reproduced below with the canister interface highlighted in red, the canister highlighted in green, the solvent source container highlighted in yellow, and the extract container highlighted in blue.




FIG. 1

46. Figure 2 of the '303 application is reproduced below with the canister interface highlighted in red, the canister highlighted in green, and the extract container highlighted in blue.




FIG. 2

47. It would have been obvious to configure the canister interface of the '303 application to "detachably support a supplemental canister in fluid communication with the solvent source container and extract container," as recited in claim 13 of the '751 patent.

48. U.S. Patent Application Publication No. 20110133120 ("the '120 application") was published on June 9, 2011.

49. The '120 application is prior art to the '751 patent.

50. The '120 application is not listed on the face of the '751 patent.

51. The '120 application is not listed on any Information Disclosure Statement ("IDS") filed in connection with the '751 patent.

52. The '120 application was not considered by the Examiner during prosecution of the application that matured into the '751 patent.

53. The '120 application anticipates claim 13 of the '751 patent.

54. The '120 application renders claim 13 of the '751 patent obvious.

55. The '303 application in view of the '120 application renders claim 13 of the '751 patent obvious.

56. U.S. Patent Application Publication No. 20060041154 ("the '154 application") was published on February 23, 2006.

57. The '154 application is prior art to the '751 patent.

58. The '154 application is not listed on the face of the '751 patent.

59. The '154 application is not listed on any Information Disclosure Statement ("IDS") filed in connection with the '751 patent.

60. The '154 application was not considered by the Examiner during prosecution of the application that matured into the '751 patent.

61. The '154 application shows two canisters, as that word is used in the '751 patent.

62. The '154 application anticipates claim 13 of the '751 patent.

63. The '154 application renders claim 13 of the '751 patent obvious.

64. The '154 application in combination with the '120 application renders claim 13 of the '751 patent obvious.

65. The ‘154 application in combination with the ‘303 application and the ‘120 application renders claim 13 of the ‘751 patent obvious.

66. U.S. Patent No. 6,312,528 (“the ‘528 patent”) was issued on November 6, 2001.

67. The ‘528 patent is prior art to the ‘751 patent.

68. The ‘528 patent is not listed on the face of the ‘751 patent.

69. The ‘528 patent is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘751 patent.

70. The ‘528 patent was not considered by the Examiner during prosecution of the application that matured into the ‘751 patent.

71. The ‘528 patent shows three canisters, as that word is used in the ‘751 patent.

72. The ‘528 patent anticipates claim 13 of the ‘751 patent.

73. The ‘528 patent renders claim 13 of the ‘751 patent obvious.

74. The ‘528 patent in combination with the ‘120 application renders claim 13 of the ‘751 patent obvious.

75. The ‘528 patent in combination with the ‘303 application and the ‘120 application renders claim 13 of the ‘751 patent obvious.

76. The ‘154 application in combination with the ‘528 patent, the ‘303 application, and the ‘120 application renders claim 13 of the ‘751 patent obvious.

77. Claim 13 of the ‘751 patent is invalid.

## THIRD CAUSE OF ACTION

## Declaratory Judgment of Non-Infringement of the ‘532 Patent

78. CHL repeats and incorporates by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

79. GPT asserts claims 14 and 15 of the ‘532 patent against CHL’s use of the MeP 30.

80. Other than claims 14 and 15, GPT has not asserted any other claim of the ‘532 patent against CHL.

81. Other than CHL’s use of the MeP 30, GPT has not asserted any claim of the ‘532 patent against any other actions of CHL.

82. Claim 14 of the ‘532 patent recites, among other things, “exposing the source material in a canister to a liquid solvent for a predetermined period of time to create an extract mixture having the solute in solution with the liquid solvent.”

83. Any process that does not include at least “exposing the source material in a canister to a liquid solvent for a predetermined period of time to create an extract mixture having the solute in solution with the liquid solvent” does not infringe claim 14 or claim 15 of the ‘532 patent.

84. CHL does not, among other things described in the ‘532 patent, expose “source material in a canister to a liquid solvent for a predetermined period of time to create an extract mixture having the solute in solution with the liquid solvent.”

85. CHL does not infringe the ‘532 patent.

## FOURTH CAUSE OF ACTION

### Declaratory Judgment of Invalidity of the ‘532 Patent

86. CHL repeats and incorporates by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

87. The ‘532 patent issued from an application filed on November 4, 2013.

88. The ‘303 application is prior art to the ‘532 patent.

89. The ‘303 application is not listed on the face of the ‘532 patent.

90. The ‘303 application is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘532 patent.

91. The ‘303 application was not considered by the Examiner during prosecution of the application that matured into the ‘532 patent.

92. The ‘303 application describes a “method for extracting solute from a source material,” as recited in claim 14 of the ‘532 patent.

93. The ‘303 application describes “exposing the source material in a canister to a liquid solvent for a predetermined period of time to create an extract mixture having the solute in solution with the liquid solvent,” as recited in claim 14 of the ‘532 patent.

94. The ‘303 application describes “communicating the extract mixture to an extract container, the extract container in fluid communication with the canister,” as recited in claim 14 of the ‘532 patent.

95. The ‘303 application describes “separating the solute from the extract mixture to define an evaporated solvent by, heating the extract container to evaporate the liquid solvent,” as recited in claim 14 of the ‘532 patent.

96. The ‘303 application describes “cooling the evaporated solvent to a temperature below the boiling point of the solvent to define a recycled liquid solvent prior to collecting the recycled liquid solvent in the solvent collection container,” as recited in claim 14 of the ‘532 patent.

97. The ‘303 application describes “collecting the recycled liquid solvent in a solvent collection container in fluid communication with the extract container, the recycled liquid solvent being stored in the solvent collection container as a liquid,” as recited in claim 14 of the ‘532 patent.

98. The ‘303 application describes “receiving the evaporated solvent through a container output opening positioned above the solute contained in the extract container,” as recited in claim 15 of the ‘532 patent.

99. The ‘303 application describes “directing the evaporated solvent through a solvent collection line,” as recited in claim 15 of the ‘532 patent.

100. The ‘303 application describes “engaging, thermally, the evaporated solvent to a coolant along at least a portion of the solvent collection line,” as recited in claim 15 of the ‘532 patent.

101. The ‘303 application anticipates claim 14 and claim 15 of the ‘532 patent.

102. The ‘303 application renders claim 14 and claim 15 of the ‘532 patent obvious.

103. The ‘120 application is prior art to the ‘532 patent.

104. The ‘120 application is not listed on the face of the ‘532 patent.

105. The ‘120 application is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘532 patent.

106. The ‘120 application was not considered by the Examiner during prosecution of the application that matured into the ‘532 patent.

107. The ‘120 application anticipates claim 14 and claim 15 of the ‘532 patent.

108. The ‘120 application renders claim 14 and claim 15 of the ‘532 patent obvious.

109. The ‘303 application in combination with the ‘120 application renders claim 14 and claim 15 of the ‘532 patent obvious.

110. The ‘154 application is prior art to the ‘532 patent.

111. The ‘154 application is not listed on the face of the ‘532 patent.

112. The ‘154 application is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘532 patent.

113. The ‘154 application was not considered by the Examiner during prosecution of the application that matured into the ‘532 patent.

114. The ‘154 application anticipates claim 14 and claim 15 of the ‘532 patent.

115. The ‘154 application renders claim 14 and claim 15 of the ‘532 patent obvious.

116. The ‘154 application in combination with the ‘120 application renders claim 14 and claim 15 of the ‘532 patent obvious.

117. The ‘154 application in combination with the ‘303 application and the ‘120 application renders claim 14 and claim 15 of the ‘532 patent obvious.

118. The ‘528 patent is prior art to the ‘532 patent.

119. The ‘528 patent is not listed on the face of the ‘532 patent.

120. The ‘528 patent is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘532 patent.

121. The ‘528 patent was not considered by the Examiner during prosecution of the application that matured into the ‘532 patent.

122. The ‘528 patent anticipates claim 13 of the ‘532 patent.

123. The ‘528 patent renders claim 13 of the ‘532 patent obvious.

124. The ‘528 patent in combination with the ‘120 application renders claim 14 and claim 15 of the ‘532 patent obvious.

125. The ‘528 patent in combination with the ‘303 application and the ‘120 application renders claim 14 and claim 15 of the ‘532 patent obvious.

126. The ‘154 application in combination with the ‘528 patent, the ‘303 application, and the ‘120 application renders claim 14 and claim 15 of the ‘532 patent obvious.

127. Claims 14 and 15 of the ‘532 patent are invalid.

## FIFTH CAUSE OF ACTION

## Declaratory Judgment of Non-Infringement of the ‘203 Patent

128. CHL repeats and incorporates by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

129. GPT asserts claims 1, 9, and 10 of the ‘203 patent against CHL’s use of the MeP 30.

130. Other than claims 1, 9, and 10, GPT has not asserted any other claim of the ‘203 patent against CHL.

131. Other than CHL’s use of the MeP 30, GPT has not asserted any claim of the ‘203 patent against any other actions of CHL.

132. Claim 1 of the ‘203 patent recites, among other things, “cooling the recycled solvent within the solvent collection container.”

133. Any process that does not include at least “cooling the recycled solvent within the solvent collection container” does not infringe claim 1, claim 9, or claim 10 of the ‘203 patent.

134. As depicted in the claim chart for the ‘203 patent that GPT filed with its complaint in a related case, *Gene Pool Technologies, Inc. v. ANM, Inc.*, No. 1:21-cv-01154 (D. Or. Filed Aug. 6, 2021) (“the Oregon Litigation”), the MeP 30 does not, among other things described in the ‘203 patent, cool “the recycled solvent within the solvent collection container.”

135. The following image appears in the claim chart for the ‘203 patent that GPT filed with its complaint in the Oregon Litigation but was omitted from the claim chart for the ‘203 patent filed in this action (*see generally* Doc. 1-6):




136. The above image depicts a solvent collection container.

137. The above image does not depict anything that cools “the recycled solvent within the solvent collection container.”

138. The above image does not depict a “cooling mechanism” coupled to the solvent collection container depicted in the above image.

139. The above image does not depict a “coiled freezing tube” coupled to the solvent collection container depicted in the above image.

140. CHL does not infringe claim 1, claim 9, or claim 10 of the ‘203 patent.

141. CHL does not infringe the ‘203 patent.

**<u>SIXTH CAUSE OF ACTION</u>**

**<u>Declaratory Judgment of Invalidity of the ‘203 Patent</u>**

142. CHL repeats and incorporates by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

143. The ‘203 patent lists improper inventorship.

144. The ‘203 patent is invalid for listing improper inventorship.

145. The ‘203 patent is a continuation-in-part of an application filed on November 4, 2013.

146. The ‘203 patent issued from an application filed on August 25, 2015.

147. The ‘303 application is prior art to the ‘203 patent.

148. The ‘303 application is not listed on the face of the ‘203 patent.

149. The ‘303 application is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘203 patent.

150. The ‘303 application was not considered by the Examiner during prosecution of the application that matured into the ‘203 patent.

151. The ‘303 application describes a “method for extracting solute from a source material,” as recited in claim 1 of the ‘203 patent.

152. The ‘303 application describes “depositing the source material having a solute in a canister,” as recited in claim 1 of the ‘203 patent.

153. The ‘303 application describes “introducing a solvent into the canister,” as recited in claim 1 of the ‘203 patent.

154. The ‘303 application describes “exposing the source material to the solvent to create an extract mixture having the solute in solution with the solvent,” as recited in claim 1 of the ‘203 patent.

155. The ‘303 application describes “fluidly communicating the extract mixture to one or more extract containers, the one or more extract containers being in fluid communication with the canister,” as recited in claim 1 of the ‘203 patent.

156. The ‘303 application describes “separating the solute from the extract mixture to define a recycled solvent by heating the one or more extract containers to evaporate the recycled solvent,” as recited in claim 1 of the ‘203 patent.

157. The ‘303 application describes “collecting the recycled solvent in a solvent collection container in fluid communication with the one or more extract containers,” as recited in claim 1 of the ‘203 patent.

158. The ‘303 application describes “wherein the solvent storage container further comprises a cooling mechanism coupled to the solvent storage container for cooling the recycled solvent,” as recited in claim 9 of the ‘203 patent.

159. The ‘303 application describes “wherein the cooling mechanism comprises a coiled freezing tube fluidly coupled to a compressor pump and configured to receive a coolant,” as recited in claim 10 of the ‘203 patent.

160. The ‘303 application anticipates claim 1, claim 9, and claim 10 of the ‘203 patent.

161. The ‘303 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

162. The ‘120 application is prior art to the ‘203 patent.

163. The ‘120 application is not listed on the face of the ‘203 patent.

164. The ‘120 application is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘203 patent.

165. The ‘120 application was not considered by the Examiner during prosecution of the application that matured into the ‘203 patent.

166. The ‘120 application describes a “method for extracting solute from a source material,” as recited in claim 1 of the ‘203 patent.

167. The ‘120 application describes “depositing the source material having a solute in a canister,” as recited in claim 1 of the ‘203 patent.

168. The ‘120 application describes “introducing a solvent into the canister,” as recited in claim 1 of the ‘203 patent.

169. The ‘120 application describes “exposing the source material to the solvent to create an extract mixture having the solute in solution with the solvent,” as recited in claim 1 of the ‘203 patent.

170. The ‘120 application describes “fluidly communicating the extract mixture to one or more extract containers, the one or more extract containers being in fluid communication with the canister,” as recited in claim 1 of the ‘203 patent.

171. The ‘120 application describes “separating the solute from the extract mixture to define a recycled solvent by heating the one or more extract containers to evaporate the recycled solvent,” as recited in claim 1 of the ‘203 patent.

172. The ‘120 application describes “collecting the recycled solvent in a solvent collection container in fluid communication with the one or more extract containers,” as recited in claim 1 of the ‘203 patent.

173. The ‘120 application describes “cooling the recycled solvent within the solvent collection container,” as recited in claim 1 of the ‘203 patent.

174. The ‘120 application describes “wherein the solvent storage container further comprises a cooling mechanism coupled to the solvent storage container for cooling the recycled solvent,” as recited in claim 9 of the ‘203 patent.

175. The ‘120 application describes “wherein the cooling mechanism comprises a coiled freezing tube fluidly coupled to a compressor pump and configured to receive a coolant,” as recited in claim 10 of the ‘203 patent.

176. The ‘120 application anticipates claim 1, claim 9, and claim 10 of the ‘203 patent.

177. The ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

178. The ‘303 application in combination with the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

179. U.S. Patent Application Publication No. 20130168225 ("the '225 application") was published on July 4, 2013.

180. The '225 application is prior art to the '203 patent.

181. The '225 application is not listed on the face of the '203 patent.

182. The '225 application is not listed on any Information Disclosure Statement ("IDS") filed in connection with the '203 patent.

183. The '225 application was not considered by the Examiner during prosecution of the application that matured into the '203 patent.

184. The '225 application describes "wherein the cooling mechanism comprises a coiled freezing tube fluidly coupled to a compressor pump and configured to receive a coolant," as recited in claim 10 of the '203 patent.

185. The '303 application in combination with the '225 application renders claim 1, claim 9, and claim 10 of the '203 patent obvious.

186. The '120 application in combination with the '225 application renders claim 1, claim 9, and claim 10 of the '203 patent obvious.

187. The '303 application in combination with the '120 application and the '225 application renders claim 1, claim 9, and claim 10 of the '203 patent obvious.

188. The '154 application is prior art to the '203 patent.

189. The '154 application is not listed on the face of the '203 patent.

190. The '154 application is not listed on any Information Disclosure Statement ("IDS") filed in connection with the '203 patent.

191. The '154 application was not considered by the Examiner during prosecution of the application that matured into the '203 patent.

192. The '154 application anticipates claim 1, claim 9, and claim 10 of the '203 patent.

193. The ‘154 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

194. The ‘154 application in combination with the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

195. The ‘154 application in combination with the ‘225 application and the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

196. The ‘154 application in combination with the ‘303 application and the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

197. The ‘154 application in combination with the ‘303 application, the ‘225 application, and the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

198. The ‘528 patent is prior art to the ‘203 patent.

199. The ‘528 patent is not listed on the face of the ‘203 patent.

200. The ‘528 patent is not listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘203 patent.

201. The ‘528 patent was not considered by the Examiner during prosecution of the application that matured into the ‘203 patent.

202. The ‘528 patent anticipates claim 1, claim 9, and claim 10 of the ‘203 patent.

203. The ‘528 patent renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

204. The ‘528 patent in combination with the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

205. The ‘528 patent in combination with the ‘120 application and the ‘225 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

206. The ‘528 patent in combination with the ‘303 application and the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

207. The ‘528 patent in combination with the ‘303 application, the ‘225 application, and the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

208. The ‘154 application in combination with the ‘528 patent, the ‘303 application, and the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

209. The ‘154 application in combination with the ‘528 patent, the ‘303 application, the ‘225 application, and the ‘120 application renders claim 1, claim 9, and claim 10 of the ‘203 patent obvious.

210. Claims 1, 9, and 10 of the ‘203 patent are invalid.

## SEVENTH CAUSE OF ACTION

## Declaratory Judgment of Unenforceability of the ‘203 Patent

211. CHL repeats and incorporates by reference the allegations of the preceding paragraphs of these Counterclaims as if fully set forth herein.

212. The ‘203 patent issued on March 7, 2017.

213. U.S. Patent No. 9,682,333 (“the ‘333 patent”) lists the same inventors as the ‘203 patent.

214. The ‘333 patent was prosecuted by the same law firm as the ‘203 patent.

215. The ‘333 patent lists a different Patent Examiner than the ‘203 Patent.

216. On October 20, 2016, the Patent Examiner of the ‘333 patent cited U.S. Patent Application Publication No. 20110133120 (“the ‘120 application”) in

rejecting then pending claims of the application that eventually matured into the ‘333 patent.

217. On October 20, 2016, the Patent Examiner of the ‘333 patent asserted that the ‘120 application “discloses a system (Fig. 5) for extracting solute from a source material.”

218. On October 20, 2016, the Patent Examiner of the ‘333 patent asserted that the ‘120 application discloses:

> A solvent source container (Fig.5:510) configured to store and cool (Fig.5:515) a solvent, the solvent source container having a cooling mechanism coupled to and enclosing (Fig.5:510 and 515) the solvent source container for cooling the solvent;
>
> A canister (Fig.5:525) being: in fluid communication (Fig.5:520) with the solvent source container; configured to contain the source material; and configured to receive solvent from the solvent source container in its interior to produce an extract solution having the solvent and the solute extracted from the source material;
>
> One or more extract containers (Fig.5:540) in fluid communication with the canister, the one or more extract containers being configured to fluidly receive and collect the extract solution from the canister (Fig.5:525), the one or more extract containers bring further configured to distill the extract solution to produce a post--extraction portion of the solute in the one or more extract containers,
>
> Wherein the solvent source container (Fig.5:510) is in fluid communication (unlabeled lines connecting 540 and 510) with the one or more extract containers (Fig.5:540) and is configured to receive a post-extraction portion of the solvent from the one or more extract containers.

219. The law firm that prosecuted the ‘203 patent responded to the Patent Examiner of the ‘333 patent, referencing the ‘120 application, before the ‘203 patent issued.

220. The inventors of the ‘203 patent knew about the ‘120 application before the ‘203 patent issued.

221. The law firm that prosecuted the ‘203 patent knew about the ‘120 application before the ‘203 patent issued.

222. The ‘120 application is relevant to the claims of the ‘203 patent.

223. The ‘120 application is material to the patentability of at least one claim of the ‘203 patent.

224. The inventors of the ‘203 patent knew that the ‘120 application was material to the patentability of at least one claim of the ‘203 patent before the ‘203 patent issued.

225. The law firm that prosecuted the ‘203 patent knew that the ‘120 application was material to the patentability of at least one claim of the ‘203 patent before the ‘203 patent issued.

226. The ‘120 application was not cited to the United States Patent Office in the application that matured into the ‘203 patent during the pendency of the application that matured into the ‘203 patent.

227. The inventors of the ‘203 patent committed inequitable conduct by withholding the ‘120 application from the Patent Examiner of the application that matured into the ‘203 patent.

228. The law firm that prosecuted the ‘203 patent committed inequitable conduct by withholding the ‘120 application from the Patent Examiner of the application that matured into the ‘203 patent.

229. On October 20, 2016, the Patent Examiner of the ‘333 patent cited U.S. Patent Application Publication No. 20130168225 (“the ‘225 application”) in rejecting then pending claims of the application that eventually matured into ‘333 patent.

230. On October 20, 2016, the Patent Examiner of the ‘333 patent asserted that the ‘225 application (which the Patent Examiner referred to as Oikimus) discloses:

> Oikimus discloses a distilling system having a heat pump compressor (Fig.1:1) and a coiled condenser coil (considered as the coiled freezing tube) and a coiled concentrate coil (Fig.1:11 and 12) in order to provide a distiller with closed loop energy circulation [0001]. The claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains to add a coiled freezing tube/compressor pump to McGhee system in order to provide a closed loop energy circulation.

231. Claim 10 of the ’203 patent recites “wherein the cooling mechanism comprises a coiled freezing tube fluidly coupled to a compressor pump and configured to receive a coolant.”

232. The ‘225 application is material to the patentability of at least claim 10 of the ‘203 patent.

233. The law firm that prosecuted the ‘203 patent responded to the Patent Examiner of the ‘333 patent, referencing the ‘225 application, before the ‘203 patent issued.

234. The inventors of the ‘203 patent knew about the ‘225 application before the ‘203 patent issued.

235. The law firm that prosecuted the ‘203 patent knew about the ‘225 application before the ‘203 patent issued.

236. The ‘225 application is relevant to at least one claim of the ‘203 patent.

237. The ‘225 application is material to the patentability of at least one claim of the ‘203 patent.

238. The inventors of the ‘203 patent knew that the ‘225 application was material to the patentability of at least one claim of the ‘203 patent before the ‘203 patent issued.

239. The law firm that prosecuted the ‘203 patent knew that the ‘225 application was material to the patentability of at least one claim of the ‘203 patent before the ‘203 patent issued.

240. The ‘225 application was not cited to the United States Patent Office in the application that matured into the ‘203 patent during the pendency of the application that matured into the ‘203 patent.

241. The inventors of the ‘203 patent committed inequitable conduct by withholding the ‘225 application from the Patent Examiner of the application that matured into the ‘203 patent.

242. The law firm that prosecuted the ‘203 patent committed inequitable conduct by withholding the ‘225 application from the Patent Examiner of the application that matured into the ‘203 patent.

243. The ‘203 patent is unenforceable due to inequitable conduct.

244. Neither the ‘120 application nor the ‘225 application is listed on the face of the ‘203 patent.

245. Neither the ‘120 application nor the ‘225 application is listed on any Information Disclosure Statement (“IDS”) filed in connection with the ‘203 patent.

246. Neither the ‘120 application nor the ‘225 application was cited in the application that matured into the ‘203 patent.

247. Neither the ‘120 application nor the ‘225 application was considered by the Examiner during prosecution of the application that matured into the ‘203 patent.

248. The ‘120 application is a publication of the application that matured into U.S. Patent No. 9,604,155 (“the ‘155 patent”).

249. On August 6, 2021, GPT asserted the ‘155 patent against ANM, Inc. in the Oregon Litigation.

250. GPT was aware of the ‘120 application before filing the Complaint in this matter.

251. Ryan Owens, counsel for GPT, was aware of the ‘120 application before filing the Complaint in this matter.

252. GPT was aware that the ‘120 application was prior art to the ‘203 patent before filing the Complaint in this matter.

253. Ryan Owens, counsel for GPT, was aware that the ‘120 application was prior art to the ‘203 patent before filing the Complaint in this matter.

254. GPT was aware that the ‘120 application was material to the patentability of at least one claim of the ‘203 patent before filing the Complaint in this matter.

255. Ryan Owens, counsel for GPT, was aware that the ‘120 application was material to the patentability of at least one claim of the ‘203 patent before filing the Complaint in this matter.

256. GPT was aware that the ‘120 application had not been cited in the application that matured into the ‘203 patent before filing the Complaint in this matter.

257. Ryan Owens, counsel for GPT, was aware that the ‘120 application had not been cited in the application that matured into the ‘203 patent before filing the Complaint in this matter.

258. Knowingly asserting an unenforceable patent is frivolous.

259. By asserting the ‘203 patent, GPT has advanced a frivolous claim against CHL.

260. By asserting the ‘203 patent, Ryan Owens, counsel for GPT, has advanced a frivolous claim against CHL.

261. Failing to conduct an “inquiry reasonable under the circumstances” before filing suit is a violation of Federal Rule of Civil Procedure 11(b).

262. An “inquiry reasonable under the circumstances,” as that phrase is used in Federal Rule of Civil Procedure 11(b), would include a review of the prosecution history of a patent to be asserted in litigation.

263. A review of the prosecution history of the ‘203 patent reveals that the ‘120 application was not cited in the application that matured into the ‘203 patent.

264. A review of the prosecution history of the ‘203 patent reveals that the ‘120 application is prior art to the ‘203 patent.

265. A review of the prosecution history of the ‘203 patent reveals that the ‘120 application is material to at least one claim of the ‘203 patent.

266. A review of the prosecution history of the ‘203 patent reveals that the ‘225 application was not cited in the application that matured into the ‘203 patent.

267. A review of the prosecution history of the ‘203 patent reveals that the ‘225 application is prior art to the ‘203 patent.

268. A review of the prosecution history of the ‘203 patent reveals that the ‘225 application is material to at least one claim of the ‘203 patent.

269. By asserting the ‘203 patent, Ryan Owens, counsel for GPT, has violated at least Federal Rule of Civil Procedure 11(b).

## DEMAND FOR JURY

270. Defendant demands a jury trial of all issues in this action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

A. Plaintiff recovers nothing and its complaint be dismissed with prejudice;

B. The Court finds that this case is an exceptional case pursuant to 35 U.S.C. § 285 and award Defendant its reasonable attorney’s fees in this action;

C. All costs be taxed against Plaintiff;

D. Defendant does not infringe United States Patent No. 9,144,751;

E. United States Patent No. 9,144,751 is invalid;

F. Defendant does not infringe United States Patent No. 9,145,532;

G. United States Patent No. 9,145,532 is invalid;

H. Defendant does not infringe United States Patent No. 9,587,203;

I. United States Patent No. 9,587,203 is invalid;

//

//

//

J. United States Patent No. 9,587,203 is unenforceable; and

K. Defendant be granted such other and further relief as the Court deems just and proper.

Dated: September 1, 2021

EMERGE LAW GROUP

By: /s/ *Timothy L. Alger*
Timothy L. Alger

MACKEY LAW FIRM PLLC
Cole Mackey

Attorneys for Defendant Coastal Harvest, LLC