Timothy L. Alger (Cal. Bar No. 160303)
EMERGE LAW GROUP
100 Spectrum Center Drive, Suite 900
Irvine, California 92618
Telephone: 949-936-2610
tim@emergelawgroup.com

James R. Gourley (TX Bar No. 24050679 (Admitted Pro Hac Vice))
CARSTENS & CAHOON LLP
13760 Noel Rd., Suite 900
Dallas, Texas 75240
Telephone: 972-367-2001
gourley@cclaw.com

Attorneys for Defendants
COASTAL HARVEST, LLC and
ANM, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| GENE POOL TECHNOLOGIES, INC., <br><br> Plaintiff, <br> v. <br> COASTAL HARVEST, LLC, <br><br> Defendant. <br><br> AND CONSOLIDATED MATTERS | Case No.: 5:21-cv-01328-JWH-SHK <br> Consolidated with 2:21-cv-08756 <br><br> **DEFENDANTS' SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hon. Judge W. Holcomb <br><br> <u>Hearing</u>: <br> Date: October 7, 2022 <br> Time: 9:00 a.m. <br> Ctrm: 9D, 9th Floor |

**TABLE OF CONTENTS**

I. Introduction .................................................................................................. 6

II. Legal Standard ............................................................................................. 7

   A. It is illegal for a person to participate in violations of the CSA, whether it is done directly, as an aider and abettor, or as a co-conspirator. It is also illegal for a person to engage in financial transactions involving proceeds of unlawful activity. .......................... 8

   B. Courts routinely dismiss or limit claims that involve illegal activity and have a long history of doing so. ........................................ 9

III. This Court lacks subject matter jurisdiction over Gene Pool's claims because its complaints facially allege (1) that Defendants are engaging in federally illegal conduct and owe Gene Pool proceeds from that illegal conduct, and (2) that Gene Pool is aiding or abetting, and attempting to conspire or conspiring, to violate the CSA, and attempting to engage in money laundering. ...................................................... 14

   A. Even if Gene Pool's complaint does not facially show that it is engaged in criminal activity, its allegations and prayer are asking the Court to award it past damages and future royalties from allegedly illegal conduct. ................................................................. 15

   B. Gene Pool's attempts to collect royalties both outside of court and within this lawsuit constitute conspiracy, an attempt to conspire, or aiding or abetting a violation of the CSA, and attempted money laundering. .......................................................... 15

IV. This Court should dismiss Gene Pool's claims for failure to state a claim because the Court cannot provide any relief to Gene Pool that does not involve federally illegal cannabis-derived assets. ..................... 16

V. Conclusion .................................................................................................. 18

# Cases

*Tailford v. Experian Info. Sols., Inc.*,
  26 F.4th 1092 (9th Cir. 2022) ............................................................................. 7

*Augustine v. United States*,
  704 F.2d 1074 (9th Cir. 1983) ............................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 7, 8

*Emrich v. Touche Ross & Co.*,
  846 F.2d 1190 (9th Cir. 1988) ............................................................................ 7

*Everett v. Williams*
  9 L.Q. Rev. 197 (1893) ....................................................................................... 9

*Ewell v. Daggs*,
  108 U.S. 143 (1883) ........................................................................................... 9

*Fourth Corner Credit Union v. Fed. Reserve Bank of Kansas City*,
  861 F.3d 1052 (10th Cir. 2017) .................................................................. 11, 17

*Gonzales v. Raich*,
  545 U.S. 1 (2005) ............................................................................................... 8

*Gopal v. Luther*,
  No. 2:21-cv-00735-KJM-CKD, 2022 U.S. Dist. LEXIS 30221, (E.D. Cal. Feb. 18, 2022) .................................................................................................... 13, 16

*In re Arenas*, 514 B.R.
  887 (Bankr. D. Colo. 2014) .............................................................................. 10

*In re CWNevada LLC*,
  602 B.R. 717 (Bankr. D. Nev. 2019) ................................................................ 10

*In re Johnson*,
  532 B.R. 53 (Bankr. W.D. Mich. 2015) ............................................................ 10

*In re Medpoint Mgmt.*,
  528 B.R. 178 (Bankr. D. Ariz. 2015) ................................................................ 10

*In re Rent-Rite Super Kegs W. Ltd.*,
  484 B.R. 799 (Bankr. D. Colo. 2012) ............................................................... 10

3
MOTION TO DISMISS

*J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*,
　No. 18-cv-01104, 2020 WL 1855190 (D. Or. Apr. 13, 2020) ....................... 12, 16

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
　Case No. 19-cv-03459- CRB, 2019 U.S. Dist. LEXIS 152501, (N.D. Cal. Sept. 6, 2019) ............................................................................................................... 13

*Mischalski v. Ford Motor Co.*,
　935 F. Supp. 203 (E.D.N.Y. 1996) ...................................................................... 11

*Roberts v. Corrothers*,
　812 F.2d 1173 (9th Cir. 1987) ............................................................................... 7

*Safe Air for Everyone v. Meyer*,
　373 F.3d 1035 (9th Cir. 2004) ............................................................................... 7

*Scott v. Breeland*,
　792 F.2d 925 (9th Cir. 1986) ................................................................................. 7

*Sensoria, Ltd. Liab. Co. v. Kaweske*,
　Civil Action No. 20-cv-00942-MEH, 2022 U.S. Dist. LEXIS 12459, (D. Colo. Jan. 24, 2022) ............................................................................................ 11, 16, 17

*Shulman v. Kaplan*,
　2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) ............................................... 12, 16

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016) .............................................................................................. 7

*Street v. ACC Enters., LLC*, Case No. 2:17-cv-00083-GMN-VCF, 2018 U.S.
　Dist. LEXIS 167299, (D. Nev. Sept. 27, 2018) ................................................... 13

*The Florida*,
　101 U.S. 37 (1879) ................................................................................................ 9

*Tracy v. USAA Cas. Ins. Co.*,
　Case No. 11-00487 LEK-KSC, 2012 U.S. Dist. LEXIS 35913, (D. Haw. Mar. 16, 2012) ............................................................................................................... 13

*United States v. Shabani*,
　513 U.S. 10 (1994) ................................................................................................ 8

**Statutes**

18 U.S.C. § 1956(c)(7)(B)(i) ................................................................................. 16

18 U.S.C. § 2 .................................................................................................. 8, 16

18 U.S.C. § 1956(a)(1)(A)(i) ................................................................................. 8

21 U.S.C. § 801 et seq. .......................................................................................... 6

21 U.S.C. § 802(16)(B)(i) ................................................................................... 14

21 U.S.C. § 841(a)(1) ............................................................................................ 8

21 U.S.C. § 846 ..................................................................................................... 8

7 U.S.C. § 1639o ................................................................................................ 14

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 7

Fed. R. Civ. P. 12(c) ............................................................................................. 7

Fed. R. Civ. P. 12(h)(3) ......................................................................................... 7

**Other Authorities**

William J. McNichol, Jr., *The New Highwayman: Enforcement of U.S. Patents on* Cannabis *Products*.
  101 J. Pat. & Trademark Off. Soc'y 24 ................................................................ 9

## I. Introduction

In this lawsuit, Plaintiff Gene Pool Technologies, Inc. ("Gene Pool") seeks to use the power of United States District Courts to demand patent infringement royalties from cannabis oil extraction. A long line of precedent, dating from the 1700s to today, requires the Court to dismiss this case because it lacks subject matter jurisdiction and cannot provide relief on these claims; the Court cannot divvy up revenues that, under federal law, are derived from illegal activity.

Gene Pool bills itself as "a technology aggregation, development, and licensing company focused on cannabis and hemp extraction technologies." (Dkt. 1 at para. 3.) Gene Pool's only allegation of infringement involves Defendants' alleged use of equipment to "extract products from cannabis." (Dkt. 1 at para. 6.) Gene Pool is also asking this Court for damages amounting to at least a reasonable royalty for cannabis extraction that is alleged to infringe. (Dkt. 1, p. 8, para. B.)

Regardless of whether any state laws allow it, the production, distribution, and sale of cannabis (or marijuana) remains illegal under the Federal Controlled Substances Act, 21 U.S.C. § 801 et seq. ("CSA"). Dismissal is warranted here because federal courts do not get involved in civil disputes over the proceeds of illegal activity. This Court is not empowered to provide Gene Pool with any remedy from Defendants Coastal Harvest, LLC and ANM, Inc.

In bringing this motion, Defendants do not concede that they have broken any federal law. This motion is based on the allegations Gene Pool has made in its complaints, and the question presented is solely whether Gene Pool's allegations give rise to subject matter jurisdiction or state a claim upon which this Court may grant relief. They do not and this action should be dismissed with prejudice.

///

///

## II. Legal Standard

Defendants move to dismiss this case under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction, and Rules 12(c) and 12(b)(6) for failure to state a claim upon which relief can be granted.

The party seeking to invoke federal jurisdiction bears the burden of establishing that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. In such a case, a court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (*quoting Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "The subject matter jurisdiction of the district court is not a waivable matter and may be raised at any time by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).

Standing is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court. *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). The factual allegations must show (1) an injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege sufficient facts to "state claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to

raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

**A.   It is illegal for a person to participate in violations of the CSA, whether it is done directly, as an aider and abettor, or as a co-conspirator. It is also illegal for a person to engage in financial transactions involving proceeds of unlawful activity.**

Federal law prohibits the "manufacture, distribut[ion], or dispens[ing], or possess[ion] with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1). Marijuana is classified as a Schedule I controlled substance, with one exception not applicable here. *Gonzales v. Raich*, 545 U.S. 1, 14, 27 (2005). ("The CSA designates marijuana as contraband for *any* purpose.")(emphasis in original).

Under federal law, aiding and abetting criminal activity is itself criminalized pursuant to 18 U.S.C. § 2, which provides: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

The conspiracy provision in the CSA states: "Any person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. Further, conspiracy under Section 846 does not require proof of an overt act in furtherance of the conspiracy; the agreement to carry out the conspiracy is the *actus reus*. *United States v. Shabani*, 513 U.S. 10, 17 (1994).

Under federal law, it is also illegal for a person "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity," to conduct or attempt to conduct the financial transaction "which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C.S. § 1956(a)(1)(A)(i). This is generally known as money laundering.

**B.     Courts routinely dismiss or limit claims that involve illegal activity and have a long history of doing so.**

What is currently known as the "illegality rule" or "illegality doctrine" started out as the doctrine of *Ex turpi causa non oritur actio* ("From a dishonorable cause an action does not arise."). The earliest recorded application of the doctrine of *Ex turpi causa* is the 1725 English case of *Everett v. Williams*, better known as *The Highwayman's Case*. (This case is noted at 9 L.Q. Rev. 197 (1893).) There, one highwayman sued another highwayman, claiming that he had been cheated out of his proceeds of a series of robberies the two had committed together. *Id*. The court refused to consider the suit and turned the two men over to the sheriff. *Id*.

In the United States, the Supreme Court has reiterated this longstanding maxim of law, holding that "[n]o court will lend its aid to a party who founds his claim for redress upon an illegal act." *The Florida*, 101 U.S. 37, 43, 25 L. Ed. 898 (1879). The denial of relief based on that maxim is "not for the sake of the defendant, but because [courts] will not lend their aid to such a plaintiff." *Ewell v. Daggs*, 108 U.S. 143, 149, 2 S. Ct. 408, 27 L. Ed. 682 (1883). This doctrine is deeply rooted in the common law and operates to protect the integrity of the law and the courts. (*See* William J. McNichol, Jr., *The New Highwayman: Enforcement of U.S. Patents on* Cannabis *Products*. 101 J. Pat. & Trademark Off. Soc'y 24.)

Federal courts consistently refuse to hear cases that would necessarily require them to distribute the proceeds of illegal activity. For example, federal bankruptcy courts dismiss bankruptcy petitions involving companies that either violate or conspire to violate the CSA. In the bankruptcy case of *In re Medpoint Mgmt.*, the bankruptcy court noted that the debtor owned IP and licensed that IP for $8,000 per month to companies engaged in the federally illegal, but state-legal, Arizona medical marijuana business. *In re Medpoint Mgmt.*, 528 B.R. 178, 181

(Bankr. D. Ariz. 2015). This was the debtor's "only current source of revenue." *Id*. After noting that cannabis is illegal under the CSA, the bankruptcy court "observe[d], without deciding, that it is quite possible that [debtor's] IP and the IP licensing revenues could be seized or forfeited, and that [debtor] could be or could have been guilty of facilitation of a crime under the CSA." *Id*. at 185. Due to the unacceptable risk of violating federal law in administering the bankruptcy estate, the court dismissed the case. *Id*. at 186.

Similarly, the bankruptcy court in *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 805 (Bankr. D. Colo. 2012) concluded that the debtor's "operations constitute a continuing criminal violation of the CSA and a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime." *See also In re Johnson*, 532 B.R. 53, 56 (Bankr. W.D. Mich. 2015) (stating that "federal judicial officers take an oath to uphold federal law, and countenancing the Debtor's continued operation of his marijuana business under the court's protection is hardly consistent with that oath"); *In re Arenas*, 514 B.R. 887, 892 (Bankr. D. Colo. 2014) (finding cause to dismiss the debtor's case because the debtor's assets included marijuana and marijuana-related assets); *In re CWNevada LLC*, 602 B.R. 717, 727- 37 (Bankr. D. Nev. 2019) (discussing bankruptcy cases involving debtors connected in various ways to marijuana businesses).

Federal courts have reached similar conclusions outside of the bankruptcy context. For example, in *Sensoria v. Kaweske*, the District of Colorado provided a detailed consideration of a federal court's ability to hear claims involving conduct that violates the CSA. When the plaintiff tried to distinguish the bankruptcy decisions involving cannabis-related companies, the court in *Sensoria* noted that "the same obstacles a trustee faces in managing marijuana assets the Court has in providing means of redress." *Sensoria, Ltd. Liab. Co. v. Kaweske*, Civil Action No. 20-cv-00942-MEH, 2022 U.S. Dist. LEXIS 12459, at *30 (D.

Colo. Jan. 24, 2022). Further, in concluding that the CSA barred most of the relief sought by the plaintiffs in that case, *Sensoria* made the following findings relevant to this case:

- "The involvement of marijuana was neither tangential nor unexpected. Plaintiffs knew what the essential nature of the undertaking would be." *Id*. at *28.
- "Illegality can bar a tort claim." *Id*. at *29 (citing *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 205 (E.D.N.Y. 1996) (noting that the defense also applies "to actions arising in tort, under the theory that one should not be rewarded for voluntary participation in an illegal act or profit from his or her own wrongdoing.")).
- A court may not use its equitable power to facilitate conduct that implicates the CSA even if that same conduct is lawful under state law. *Id*. at *30 (*citing Fourth Corner Credit Union v. Fed. Reserve Bank of Kansas City*, 861 F.3d 1052, 1055 (10th Cir. 2017).)
- "[T]he Court may not vindicate equity in or award profits from a business that grows, processes, and sells marijuana." *Id*. at *32.
- "Relief may not be in a form that endorses violating the CSA. It can neither require an act that would violate the CSA nor award monetary damages paid from a marijuana asset or income stream." *Id*. at *32-33.
- "This Court cannot award Plaintiffs lost profits from a marijuana business." *Id*. at *38.
- Marijuana assets and the ability to profit from them that were lost because of "Defendants' acts of mismanagement, fraud, and theft [were] injuries that the illegality defense does not permit this Court to remedy." *Id*. at *44.

The court in *Sensoria* did allow Plaintiffs to proceed on claims that sought

"refund of their investment principal," but only because the court presumed that "if the Defendants, presumably the individual Defendants, have assets independent of a marijuana business, then the illegality defense would not be an impediment." *Id*. at *44-45. But the limitation on recovery was clear: "This only applies to Plaintiffs' direct claims against the individual Defendants," and only to the extent they could pay from non-marijuana assets. *Id*.

Courts in this district and elsewhere have found the same. Recently, in *Shulman v. Kaplan*, 2020 WL 7094063 (C.D. Cal. Oct. 29, 2020), Judge Birotte dismissed RICO and Lanham Act claims because the court could not provide plaintiffs with the remedy they sought. "The Court cannot remedy Plaintiffs' injuries because doing so would result in an illegal mandate; in short, Plaintiffs' injuries to their cannabis business are not redressable under RICO. . . . [Also,] because Plaintiffs claim for false advertising rests wholly on Defendants' use of its trademark to advertise marijuana products, it encompasses an unlawful use such that Plaintiffs are not within the 'zone of interest' protected by the Lanham Act." *Id*. at *2-3.

Judge Birotte rejected the plaintiffs' contention that dismissing the action would improperly reward wrongdoing:

> [T]he Court finds that any potential remedy in this case would contravene federal law under the CSA. A court order requiring monetary payment to Plaintiffs for the loss of profits or injury to a business that produces and markets cannabis would, in essence (1) provide a remedy for actions that are unequivocally illegal under federal law; and (2) necessitate that a federal court contravene a federal statute (the CSA) in order to provide relief under a federal statute (RICO). The Court finds this approach to be contrary to public policy.

*Id*. at *2. *See also J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 18-cv-01104, 2020 WL 1855190 (D. Or. Apr. 13, 2020) (holding that plaintiff was

precluded from proceeding on its breach of contract and negligence claims because the court could not award plaintiff lost profits from the sale of marijuana); *Gopal v. Luther*, No. 2:21-cv-00735-KJM-CKD, 2022 U.S. Dist. LEXIS 30221, at *9 (E.D. Cal. Feb. 18, 2022) (in abstaining and remanding the case to state court, finding: "This court cannot enforce an ownership interest in a marijuana business or order damages derived from the cultivation and sale of marijuana."); *Street v. ACC Enters., LLC*, Case No. 2:17-cv-00083-GMN-VCF, 2018 U.S. Dist. LEXIS 167299, *2, 6-7, 15-16 (D. Nev. Sept. 27, 2018) (concluding in action involving breach of promissory notes that the court could not enforce portions of the notes because it could not "order any remedy that permits Defendants to directly use Plaintiff's funds for cannabis cultivation or to gain ownership in Defendant's cannabis business" as doing so would contravene the CSA); *Tracy v. USAA Cas. Ins. Co.*, Case No. 11-00487 LEK-KSC, 2012 U.S. Dist. LEXIS 35913, *2-4, 30, 38-39 (D. Haw. Mar. 16, 2012) (concluding that, although plaintiff had an insurable interest in her marijuana plants under Hawaii law, the federal court could not enforce that interest "because Plaintiff's possession and cultivation of marijuana, even for State-authorized medical use, clearly violates federal law"); *Kiva Health Brands LLC v. Kiva Brands Inc.*, Case No. 19-cv-03459- CRB, 2019 U.S. Dist. LEXIS 152501, *18-25 (N.D. Cal. Sept. 6, 2019) (concluding that because the trademark owner's use of its mark in California to brand marijuana products was not lawful use under federal law, it could not assert California common law, prior use rights to the mark in defense to a federal trademark claim).

The bottom line is federal courts will not adjudicate civil disputes involving violations of federal law or the distribution of proceeds therefrom.

///

///

///

### III. This Court lacks subject matter jurisdiction over Gene Pool's claims because its complaints facially allege (1) that Defendants are engaging in federally illegal conduct and owe Gene Pool proceeds from that illegal conduct, and (2) that Gene Pool is aiding or abetting, and attempting to conspire or conspiring, to violate the CSA, and attempting to engage in money laundering.

Gene Pool repeatedly alleges in its complaints that Defendants are engaged in conduct that is illegal under federal law, that such alleged conduct infringes its patents, and that it is seeking at least a reasonable royalty based on such conduct. For example, paragraph 7 of the complaint against ANM alleges that it uses specific equipment "to extract products from cannabis thereby infringing system and method claims of Gene Pool patents." Paragraph 8 supports its jurisdictional position by alleging that this is "an action for patent infringement arising out of ANM's unauthorized manufacture, distribution, offering for sale, and selling of cannabis extracts and related products." Paragraphs 9, 19, 30, 41, 52, 62, and Exhibits 6, 7, 8, 9, 10 all allege that the infringing activity involves extraction of compounds from cannabis. The complaint against Coastal Harvest makes essentially identical allegations.

Gene Pool's complaints also make an important distinction between cannabis and hemp. Again, in the ANM complaint at paragraph 3, Gene Pool describes itself as "a technology aggregation, development, and licensing company focused on cannabis and hemp extraction technologies." Hemp is not a controlled substance under federal law, but cannabis or marijuana is. *See* 21 U.S.C. § 802(16)(B)(i) ("The term 'marihuana' does not include (i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946" [7 USC § 1639o].) There is not a single allegation in the complaint about Defendants processing, extracting, or selling hemp.

Gene Pool has also failed to allege that Defendants have any non-marijuana-

related assets from which it can pay any damages.

Gene Pool further alleges that it sent letters to Defendants demanding payment of royalties for this alleged infringement. (Dkt. 1, para. 35)

**A.   Even if Gene Pool's complaint does not facially show that it is engaged in criminal activity, its allegations and prayer are asking the Court to award it past damages and future royalties from allegedly illegal conduct.**

There is no dispute that Gene Pool's allegations of infringement implicate alleged violations of the CSA. There are no infringement allegations involving anything other than alleged activity that constitutes a violation of the CSA. Under the reasoning of the many bankruptcy, tort, statutory, and contract cases that were discussed above and were dismissed, this Court should do the same and find that it cannot adjudicate this dispute because it involves divvying up the proceeds of violations of federal law. Gene Pool has not alleged a legally cognizable injury in fact, and this Court does not have the power to provide Gene Pool with the redress it seeks.

**B.   Gene Pool's attempts to collect royalties both outside of court and within this lawsuit constitute conspiracy, an attempt to conspire, or aiding or abetting a violation of the CSA, and attempted money laundering.**

Gene Pool's complaint also discusses a letter sent to Defendants on July 9, 2021 asserting infringement allegations that are essentially the same as those asserted in the complaints against ANM and Coastal Harvest. (Dkt. 1, para. 35) The July 9, 2021 letter also references several previous correspondence with Defendants accusing them of infringement for performing cannabis extraction. These letters are an attempt to profit from federally illegal activity by threatening to drag Defendants into a court of law and subject them to defending an expensive patent infringement lawsuit.

First, Gene Pool's attempt to get an agreement from Defendants to pay them a royalty based on the federally illegal activity of cannabis extraction is an attempt at criminal conspiracy to violate the CSA. Gene Pool's letters demonstrate in no uncertain terms that it had specific intent for Defendants to violate the CSA and pay Gene Pool an ongoing royalty for the cannabis oil being extracted. The same facts also show that Gene Pool is guilty of aiding and abetting under 18 U.S.C. § 2.

Second, Gene Pool's demand letters and patent infringement lawsuits seeking the proceeds of federally illegal activity are brazen attempts at money laundering. The federal money laundering statute prohibits anyone from knowingly engaging in a financial transaction involving "proceeds of specified unlawful activity" and lists "the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act)" as one example of such specified unlawful activity. 18 U.S.C. § 1956(c)(7)(B)(i). Further, Gene Pool plainly had intent that the unlawful activity should continue because their complaint and their demand letters suggest that they want an ongoing royalty.

Again, this Court lacks subject matter jurisdiction because Gene Pool's alleged injury is not one that is redressable by this Court. The Court simply cannot get in the middle of a civil dispute over allocation of the proceeds of criminal activity. To do so would be to condone and facilitate criminal conspiracy, aiding and abetting, and money laundering.

**IV.  This Court should dismiss Gene Pool's claims for failure to state a claim because the Court cannot provide any relief to Gene Pool that does not involve federally illegal cannabis-derived assets.**

The federal district courts in *Sensoria*, *Shulman*, *J. Lilly*, and *Gopal* all agreed that they could not award damages derived from an illegal marijuana business. Virtually every bankruptcy court agrees that the estates of illegal

marijuana businesses cannot be administered because the illegality of the underlying business prevents the trustee from paying creditors.

Here, Gene Pool has made no allegation that any of its claimed damages or royalty can be paid out of non-cannabis assets. Unlike *Sensoria*, Gene Pool has no initial investment in Defendants, and the damages it requests cannot be recovered under a legal theory that does not touch marijuana revenue. Gene Pool's entire claim for damages is inextricably tied to federally illegal cannabis oil extraction.

Further, this Court should not grant any request by Gene Pool to amend its complaint. Even if Gene Pool were to amend to request only an injunction, the Court would still be powerless to provide relief. Again, a court may not use its equitable power to facilitate conduct that implicates the CSA even if that same conduct is lawful under state law. *See, e.g., Fourth Corner Credit Union*, 861 F.3d at 1055. Gene Pool's only motivation for such a request would be to use it as a cudgel to force Defendants into a settlement that would have Defendants pay Gene Pool to allow them to perform cannabis extraction in the way that Gene Pool alleges is infringing. Gene Pool is a patent monetization entity, not a competitor, and an injunction not designed to force Defendants to pay Gene Pool would be useless under Gene Pool's business model.

Moreover, any injunction fashioned by this Court to prevent ongoing infringement would not completely prevent Defendants from violating the CSA. Instead, it would only prevent the use of *one specific method or system* of violating the CSA, as there are design arounds available for the patents in suit that would allow Defendants perform cannabis extractions without fear of infringement. Thus, the injunction would involve this Court telling a business how it can or cannot violate the CSA. The court in *Sensoria* rejected the plaintiff's suggestion that it could enjoin the defendants "to operate the business in a CSA-compliant way." *Sensoria,* 2022 U.S. Dist. LEXIS 12459, at *33. There is simply no relief,

injunctive or otherwise, available for a federal court to provide to Gene Pool in this case.

## V.  Conclusion

Gene Pool should not be allowed to use the power of the federal judiciary to violate the CSA or benefit from others' alleged violations of the CSA.  The patents in suit could conceivably be asserted against any number of entities who are engaged in extracting compounds from legal plants.  But Gene Pool's own complaint establishes that it wants to be a part of the "green rush" into the cannabis industry.  This may be a good business model someday, but today, while cannabis remains illegal under federal law, Gene Pool is faced with the same constraints on access to the federal court system as any other business that deals with illegal cannabis.  This case should be dismissed.

DATED:  August 31, 2022           EMERGE LAW GROUP

By: /s/ *Timothy L. Alger*
Timothy L. Alger
EMERGE LAW GROUP
100 Spectrum Center Drive, Suite 900
Irvine, California 92618

James R. Gourley
CARSTENS & CAHOON LLP
13760 Noel Rd., Suite 900
Dallas, Texas 75240

# PROOF OF SERVICE

My business address is 100 Spectrum Center Drive, Suite 900, Irvine, California 92618; my e-mail address is heather@emergelawgroup.com. I am employed in Fresno County, California. I am over the age of 18 years and am not a party to this case.

On the date and time indicated below, I served the foregoing document(s) described as **DEFENDANTS' SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON THE ILLEGALITY DOCTRINE** on all interested parties in this action as follows:

| | |
|---|---|
| Ryan R Owens<br>Andrew J Fossum<br>Kristopher M. Dawes<br>SPEARHEAD LEGAL LLP<br>620 Newport Center Drive Suite 1100<br>Newport Beach, CA 92660<br>Email: ryan.owens@spearheadlegal.com<br>andrew.fossum@spearheadlegal.com<br>kris.dawes@spearheadlegal.com | Attorneys for Plaintiff,<br>Gene Pool Technologies, Inc. |
| Tracy M. McGovern<br>FROHNMAYER DEATHERAGE JAMIESON MOORE ARMOSINO AND MCGOVERN<br>2592 East Barnett Road<br>Medford, OR 97504<br>Email: mcgovern@fdfirm.com | Attorneys for Plaintiff,<br>Gene Pool Technologies, Inc. |

__XX__   (BY ELECTRONIC TRANSMISSION) A PDF version of said document was served by CM/ECF via electronic mail to the party(s) identified above using the e-mail address(es) indicated.

EXECUTED ON August 31, 2022, at Fresno, California. I declare that I am employed in this office of a member of the bar of this court at whose direction this service was made.

_____
Heather Bowman