SPEARHEAD LEGAL LLP
Ryan R. Owens (Bar No. 269370)
ryan.owens@spearheadlegal.com
Kristopher M. Dawes (Bar No. 261170)
kris.dawes@spearheadlegal.com
Andrew J. Fossum (Bar No. 250373)
andrew.fossum@spearheadlegal.com
620 Newport Center Dr., Suite 1100
Newport Beach, CA 92660
Telephone: (949) 409-8401
Facsimile: (949) 336-3830

Attorneys for Plaintiff,
GENE POOL TECHNOLOGIES, INC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| GENE POOL TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COASTAL HARVEST, LLC,<br><br>Defendant. | Case Nos. 5:21-cv-01328-JWH-SHK (Lead Case);<br>2:21-cv-08756-JWH-SHK (Member Case)<br><br>**GENE POOL'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS BASED ON THE ILLEGALITY DOCTRINE** |
| COASTAL HARVEST, LLC,<br><br>Counterclaimant,<br><br>v.<br><br>GENE POOL TECHNOLOGIES, INC.,<br>Counterdefendant. | **Hon. John W. Holcomb**<br><br>Hearing:<br><br>Date: October 7, 2022<br><br>Time: 9:00 am<br><br>Ctrm: 9D, 9th Floor |
| GENE POOL TECHNOLOGIES, INC., | |

Plaintiff,

v.

ANM, INC.

Defendant.

ANM, INC.,

Counterclaimant,

v.

GENE POOL TECHNOLOGIES, INC.,
Counterdefendant.

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................1

II.  BACKGROUND ..........................................................................................2

   A.   Gene Pool's Complaints ........................................................................2

   B.   Asserted Patents.....................................................................................4

   A.   Standards for Motion to Dismiss Under Rule 12(b)(6) and 12(c).......4

   B.   Standards for Motion to Dismiss Under Rule 12(b)(1)........................5

   C.   Burden of Proof on Affirmative Defenses .............................................6

IV.  DEFENDANTS' MOTION SHOULD BE DENIED .....................................7

   A.   Defendants' 12(b)(1) Challenge Fails ...................................................7

   B.   Defendants' 12(b)(6) and 12(c) Challenge Fails ..................................8

     1.   *No bright-line rule bars federal courts from adjudicating "civil disputes involving violations of federal law or the distribution of proceeds therefrom" and Defendants' other cited "illegality" cases are legally and factually distinguishable from this action* ........................................ 9

     2.   *Defendants cannot show the nexus between Gene Pool's alleged misconduct and the controversies at issue in this action required when asserting a illegality defense in tort actions like a patent infringement action* ................................................................................................12

     3.   *Public policy favors allowing patent infringement actions to proceed against infringers violating the CSA* .......................................................16

     4.   *Remedy of compensatory damages for Defendants' infringement neither violates nor conflicts with the CSA*.........................................................19

     5.   *Little weight should be given to Defendants' allegations of criminal conduct based on Gene Pool's protected pre-litigation communications* ...................................................................................................21

V.   CONCLUSION ..........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,

    876 F.3d 1350 (Fed. Cir. 2017) ........................................................ 12

*Bart Street III v. ACC Enters., LLC*,

    2018 WL 4682318 (D. Nev. Sept. 27, 2018) .................................... 11

*BP Chems. Ltd. v. Jiangsu Sopo Corp.*,

    285 F.3d 677 (8th Cir. 2002) ............................................................ 6

*Branch v. Tunnell*,

    14 F.3d 449 (9th Cir. 1994) .............................................................. 6

*Broadcom Corp. v. Emulex Corp.*,

    2011 WL 13135066 (C.D. Cal. Aug. 11, 2011) ............................... 15

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,

    977 F.2d 1555 (Fed. Cir. 1992) ........................................................ 20

*Burton v. Maney (In re Burton)*,

    610 B.R. 633 (B.A.P. 9th Cir. 2020) ................................................ 10

*Cafasso v. Gen. Dynamics C4 Sys.*,

    637 F.3d 1047 (9th Cir. 2011) .......................................................... 5

*Callwave Communications LLC v. AT & T Mobility LLC*,

    2014 WL 5363741 (D. Del. Jan. 28, 2014) ...................................... 23

*Conley v. Gibson*,

    355 U.S. 41 (1957) ............................................................................ 5

*Dream Games of Arizona, Inc. v. PC Onsite*,

    561 F.3d 983 (9th Cir. 2009) ............................................................ 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,

    535 U.S. 722 (2002) .......................................................................... 17

OPP. TO MOTION TO DISMISS BASED ON ILLIGALITY DOCTRINE

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,

   527 U.S. 627 (1999) .......................................................................17

*Genty v. Resolution Trust Corp.*,

   937 F.2d 899 (3d Cir. 1991) ..........................................................20

*Globaltex Group Ltd. v. Trends Sportswear Ltd.*,

   2010 WL 1633438 (E.D.N.Y. Apr. 21 2010).................................19

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*,

   362 F.3d 1367 (Fed. Cir. 2004) ......................................................22

*Gopal v. Luther*,

   2022 WL 504983 (E.D. Cal. Feb. 18, 2022) ..................................11

*Green Earth Wellness Center, LLC v. Atain Specialty Insur. Co.*,

   163 F. Supp. 3d 821 (D. Col. 2016) ...............................................18

*Greenwood v. Green Leaf Lab LLC*,

   2017 WL 3391671 (D. Or. July 13, 2017) ........................................8

*Hebert v. Lisle Corp.*,

   99 F.3d 1109 (Fed. Cir. 1996) .......................................................20

*Horne v. Dep't of Agriculture*,

   576 U.S. 350 (2015) .......................................................................17

*HVLPO2, LLC v. Oxygen Frog, LLC*,

   2017 WL 5244820 (N.D. Fl. June 16, 2017)..................................23

*Hydril Co. LP v. Grant Prideco LP*,

   474 F.3d 1344 (Fed. Cir. 2007) ......................................................12

*In re Arenas*,

   514 B.R. 887 (Bankr. D. Colo. 2014)..............................................10

*In re CWNevada LLC*,

   602 B.R. 717 (2019) .........................................................................9

*In re EMC Corp.*,

   677 F.3d 1351 (Fed. Cir. 2012) ......................................................13

   Case No. 5:21-cv-01328-JWH-SHK

OPP. TO MOTION TO DISMISS BASED ON ILLIGALITY DOCTRINE

*In re Johnson*,

    532 B.R. 53 (Bankr. W.D. Mich. 2015) (debtor in possession

    enjoined from violating CSA) ........................................................... 10

*In re Medpoint Mgmt.*,

    528 B.R. 178 (Bankr. D. Ariz. 2015) ............................................... 10

*In re Rent-Rite Super Kegs W. Ltd.*,

    484 B.R. 799 (Bankr. D. Colo. 2012) ................................................ 10

*J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*,

    2020 WL 1855190 (D. Or. Apr. 13, 2020) ....................................... 11

*Keystone Driller Co. v. Gen. Excavator Co.*,

    290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933) .................... 14

*Kilopass Tech., Inc. v. Sidense Corp.*,

    738 F.3d 1302 (Fed. Cir. 2013) ........................................................ 17

*Kiva Health Brands LLC v. Kiva Brands Inc*,

    402 F. Supp. 3d 877 (N.D. Cal. 2019) .............................................. 12

*KUSH, Inc. v. Van Vranken*,

    2020 WL 8371452 (D. Nev. June 19, 2020) .................................... 18

*Lee v. City of Los Angeles*,

    250 F.3d 668 (9th Cir. 2001) ........................................................ 5, 6

*Leite v. Crane Co.*,

    749 F.3d 1117 (9th Cir. 2014) ............................................................ 6

*Lifecubes, LLC v. Northern Light Products, Inc.*,

    523 F.3d 1353 (Fed. Cir. 2008) .......................................................... 7

*Lifted Limited, LLC v. Novelty Inc.*,

    2021 WL 4480566 (D. Col. Sept. 30, 2021) .................................... 24

*Mack v. South Bay Beer Distrib.*,

    798 F.2d 1279 (9th Cir. 1986) ............................................................ 6

*Magnesystems, Inc. v. Nikken, Inc.*,
    933 F. Supp. 944 (C.D. Cal. 1996)..................................................................15

*Mann v. Gullickson*,
    2016 WL 6473215 (N.D. Cal. Nov. 2, 2016)....................................................18

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)..........................................................................13

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988)............................................................................5

*MGIC Indemnity Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986)............................................................................5

*Mischalski v. Ford Motor Co.*,
    935 F. Supp. 203 (E.D.N.Y.)..........................................................................14

*Owens v. Kaiser Found, Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001)............................................................................7

*Pacific Bell Directory v. William Muhr, LLC*,
    2007 WL 9702830 (C.D. Cal. Mar. 13, 2007) ..................................................7

*Pfaff v. Wells Electronics, Inc.*,
    525 U.S. 55 (1998) ........................................................................................17

*Pfizer, Inc. v. Int'l Rectifier Corp.*,
    545 F. Supp. 486 (C.D. Cal. 1980)...................................................................7

*Polk v. Gontmakher*,
    2021 WL 1090739 (W.D. Wash. Mar. 22, 2021)............................................10

*Precision Instrument Mfg. Co. v. Auto. Maintenance Machinery Co.*,
    324 U.S. 806 (1945) ......................................................................................18

*Proxyconn Inc. v. Microsoft Corp.*,
    2012 WL 1835680 (C.D. Cal. May 16, 2012)..................................................23

*Republic Molding Corp. v. B.W. Photo Utilities*,
    319 F.2d 347 (9th Cir. 1963) .........................................................................17

OPP. TO MOTION TO DISMISS BASED ON ILLIGALITY DOCTRINE

*Republic Tech. (NA), LLC v. BBK Tobacco & Foods*, LLC,

    262 F. Supp. 3d 605 (N.D. Ill. 2017)...................................................24

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,

    2004 WL 7333730 (C.D. Cal. Mar. 15, 2004) ...................................13

*Rite–Hite Corp. v. Kelley Co.*, 5

    6 F.3d 1538 (Fed. Cir. 1995) (en banc) ...........................................20

*Safe Air for Everyone v. Meyer*,

    373 F.3d 1035 (9th Cir. 2004)........................................................5, 6

*Sensoria, Ltd. Liab. Co. v. Kaweske*,

    548 F.Supp.3d 1011 (D. Colo. 2021) ...............................................10

*Sensoria, Ltd. Liab. Co. v. Kaweske*,

    581 F. Supp. 3d 1243 (D. Colo. 2022) ..........................................9, 16

*Shulman v. Kaplan*,

    2020 WL 7094063 (C.D. Cal. Oct. 29, 2020). .............................11, 16

*Siva Enterprises v. Ott*,

    2018 WL 6844714 (C.D. Cal. Nov. 5, 2018)...................................8, 21

*Steel Co. v. Citizens for a Better Environment*,

    523 U.S. 83 (1998) ........................................................................7, 8

*Thompson v. Davis*,

    295 F.3d 890 (9th Cir. 2002)..............................................................5

*Tracy v. USAA Cas. Ins. Co*,

    2013 WL 928186 (D. Haw. Mar. 16, 2012)......................................11

*U.S. v. Assorted Drug Paraphernalia Valued at $29,627.07*,

    2018 WL 6630524 (D.N.M. Dec. 19, 2018) ....................................24

*United States v. Assorted Drug Paraphernalia*,

    90 F.Supp.3d 1222, 1229 (D.N.M. 2015)........................................24

*Wheel Pros, LLC v. Performance Tire*,

    2017 WL 6017292 (C.D. Cal. Apr. 24, 2017).................................13

*Wichansky v. Zoel Holding Co., Inc.*,

702 F. App'x 559 (9th Cir. 2017) ..................................................................... 6

## STATUTES

18 U.S.C. § 2 .................................................................................................... 22

21 U.S.C. § 863(d) ........................................................................................... 24

21 U.S.C. § 863(f)(1) ........................................................................................ 24

28 U.S.C. § 1338(a) ............................................................................................ 7

35 U.S.C. § 261 ................................................................................................ 17

35 U.S.C. § 281 ................................................................................................ 18

35 U.S.C. § 284 ................................................................................................ 20

Fed. R. Civ. P. 12(d) .......................................................................................... 5

U.S.C. § 271(a) ................................................................................................... 7

U.S.C.S. § 1956(a)(1)(A)(i) .............................................................................. 22

Case No. 5:21-cv-01328-JWH-SHK

OPP. TO MOTION TO DISMISS BASED ON ILLIGALITY DOCTRINE

Plaintiff Gene Pool Technologies, Inc. ("Gene Pool") hereby submits its Opposition to Defendants' Motion to Dismiss Based on the Illegality Doctrine.

## I. INTRODUCTION

Over a year ago, Gene Pool filed patent infringement actions against ANM, Inc. ("ANM") and Coastal Harvest, LLC ("Coastal Harvest") (collectively, "Defendants") for their direct and willful infringement of Gene Pool patents covering systems and methods for extracting compounds from materials. None of the asserted patents mention or claim cannabis but Defendants have used the patented systems and methods to extract cannabis oil from cannabis plant material as a key step in their state-licensed manufacture of cannabis products.

With no explanation for the delay, Defendants now file a motion arguing that the original Complaints on their face failed to plead facts establishing both subject matter jurisdiction as well as any claim upon which relief can be granted. Defendants argue that the so-called "illegality doctrine" supports dismissal on these grounds. Citing no direct case on point, Defendants cobble together their version of the "illegality doctrine" from cases primarily involving cannabis companies, entangled in bankruptcy or contract disputes, operating in likely violation of the Controlled Substances Act ("CSA"). Ignoring the care with which these courts applied the "illegality doctrine" in these contexts—including repeated cautions against heavy-handed application of the doctrine without a careful consideration of the facts and policy considerations unique to each action—Defendants instead crib these cases to proclaim a bright-line rule: "federal courts will not adjudicate civil disputes involving violations of federal law or the distribution of proceeds therefrom." (Dkt. 76-1 ("Mot.") at 13.) Of course, this is nonsense: not only Defendants' own cited cases but many others show federal courts adjudicating "civil disputes involving violations of federal law" and distributing "proceeds" from these violations.

By urging the Court's adoption of such an overbroad and inflexible rule to

reach dismissal of Gene Pool's patent infringement action, Defendants ask the Court to not only immunize cannabis companies in violation of the CSA from patent infringement actions but from any "civil disputes involving violations of federal law or the distribution therefrom." But the Court need not grant cannabis companies such expansive immunity, or any immunity, because Defendants' motion is fatally flawed and should be denied on numerous grounds described in more detail below, including—to pick just two—(1) Defendants' failure to show a nexus between Gene Pool's alleged criminal misconduct and the controversies at issue in this action (a requirement when applying illegality in a tort action like a patent infringement action), and (2) public policy—often considered by courts applying illegality—disfavoring immunizing cannabis companies from patent infringement liability and thereby not only undermining of the policy goals of the Patent Act and CSA but also perversely incentivizing these cannabis companies to continue their CSA violations to preserve their immunity to suit.

The Court should deny Defendants' motion to dismiss on all grounds.

## II. BACKGROUND

### A. Gene Pool's Complaints

As relevant here, Gene Pool alleged the following facts in its Complaint against ANM ("ANM Complaint"), which is substantially similar in relevant part to the Complaint against Coastal Harvest (Dkt. 1, "CH Complaint"):

Gene Pool pled that it was "a technology aggregation, development, and licensing company focused on cannabis and hemp extraction technologies. Gene Pool brings this patent infringement action to protect its valuable patented technology related to cannabis extraction technology. Since its founding in 2018, Gene Pool has sourced and acquired some of the most promising and widely adopted innovations in the cannabis and hemp extraction industries. These technologies, for example, allow for more efficient and cost-effective extraction of cannabinoids from cannabis plant material." (CH Complaint, ¶3.)

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

1    Gene Pool pled that ANM is an Oregon company (ANM Complaint, ¶4)
2  while Coastal Harvest is a California company (CH Complaint, ¶4). Both
3  Defendants are "in the business of manufacturing, offering for sale, selling, and
4  distributing products extracted from cannabis." (CH Complaint, ¶5.) Both
5  Defendants have "used and continue[] to use the ExtractionTek Solutions Modular
6  Extraction Platform 30 ('MeP 30') to extract products from cannabis thereby
7  infringing system and method claims of Gene Pool patents." (CH Complaint, ¶6.)
8    Gene Pool pled that "[t]his Court has jurisdiction over the subject matter of
9  this action under 28 U.S.C. §§1331 and 1338(a)." (CH Complaint, ¶7) Gene Pool
10  asserted U.S. Patent Nos. 9,144,751 ("the '751 patent"); 9,145,532 ("the '532
11  patent"); 9,587,203 ("the '203 patent"), 9,604,155 ("the '155 patent"), and
12  9,757,664 ("the '664 patent") against both ANM. (ANM Complaint, ¶¶ 11-15.)
13  Gene Pool asserted the '751, '532, and '203 patents against Coastal Harvest. (CH
14  Complaint, ¶¶10-14.)
15    Gene Pool pled that the "Asserted Patents are valid and enforceable" in both
16  Complaint. (CH Complaint, ¶14.) In each Complaint, Gene Pool pled counts for
17  direct infringement of the patents asserted against each Defendant, attaching a
18  claim chart for each count detailing how the Defendant infringed a representative
19  claim of the asserted patent at issue. In each count, Gene Pool pled that the
20  Defendant was "not authorized to practice the claims" of the patent at issue, Gene
21  Pool "suffered substantial damages" as a result of Defendants' infringement, and
22  that Gene Pool was "entitled to recover the damages sustained as a result of
23  Defendant's wrongful acts in an amount subject to proof at trial."
24    For each count of infringement, Gene Pool also pled when it provided
25  Defendants with actual pre-litigation notice of their infringement for the asserted
26  patent at issue. Gene Pool also pled willful infringement, noting that Defendants
27  never responded to any of Gene Pool's attempts at pre-litigation communication.
28  (CH Complaint, ¶24.)

In each Complaint, Gene Pool "prayed for judgment and relief as follows: A. That Defendant has infringed the Asserted Patents; B. That Defendant be ordered to pay damages adequate to compensate Gene Pool for Defendant's infringement of the Asserted Patents pursuant to 35 U.S.C. § 284, including without limitation a reasonably royalty, together with interest thereon; C. That Defendant be ordered to pay treble damages for willful infringement pursuant to 35 U.S.C. § 284. D. That this case be found exceptional and awarding Gene Pool its reasonable attorneys' fees pursuant to 35 U.S.C. § 285. E. That Defendant be ordered to pay all of Gene Pool's costs associated with this action; and F. That Gene Pool be granted such other and additional relief as the Court deems equitable, just, and proper." (CH Complaint, p. 8.)

## B. Asserted Patents

The five asserted patents are attached as exhibits to the Complaints. The '751, '532, and '203 patents are directed to systems and methods for extracting solute from a source material. (*See, e.g.*, '751 Pat., Abstract.) The '155 and '664 patents are directed to systems and methods for extracting "compounds from a compound-bearing material." (See, e.g., '664 Pat., Claim 1.)

Neither the specification nor the claims of the asserted patents mention cannabis or marijuana. The '751, '532, and '203 patents discuss the extraction of essential oils from lavender plants as an exemplary embodiment of extracting solutes from a source material according to the patented invention. (*See, e.g.*, '751 Pat., 3:1-15.) The '155 and '664 patents discuss the extraction of "a plant oil from organic material, such as plant material" as an exemplary embodiment of extracting compounds from a compound-bearing material." (*See, e.g.*, '664 Pat., 3:39-43.)

## III.    LEGAL STANDARDS

### A. Standards for Motion to Dismiss Under Rule 12(b)(6) and 12(c)

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint is construed in the light most favorable to plaintiff and its

factual allegations are taken as true. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, the Court may take judicial notice of and consider matters of public record outside the pleadings. *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). A complaint may not be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). There are two exceptions: a court may (1) consider "material which is properly submitted as part of the complaint" and (2) take judicial notice of "matters of public record" under Fed. R. Evid. 201. *Id*. Otherwise, Rule 12(d) expressly provides that when, upon a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

A Rule 12(c) motion "faces the same test as a motion under Rule 12(b)(6)." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (applying *Iqbal* to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).

### B. Standards for Motion to Dismiss Under Rule 12(b)(1)

Under Rule 12(b)(1), a defending party may move for dismissal for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack claims the "allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction," whereas a

factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. If there is ambiguity as to whether the attack is facial or factual, the court applies a facial analysis. *See Wichansky v. Zoel Holding Co., Inc.*, 702 F. App'x 559, 560 (9th Cir. 2017) (district court erred in construing defendants' 12(b)(1) motion as factual, rather than facial, when ambiguity existed).

The Court treats a jurisdictional "facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Accordingly, the Court ordinarily "may not consider any material beyond the pleadings" when deciding the motion. *Lee*, 250 F.3d at 688 (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). The court may, however, consider extrinsic evidence under Federal Rule of Evidence 201 by taking judicial notice of "matters of public record." *Id*. at 688–89 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

Here, Defendants appear to bring a facial attack, asserting that their "motion is based on the allegations Gene Pool has made in its complaints, and the question presented is solely whether Gene Pool's allegations give rise to subject matter jurisdiction or state a claim upon which this Court may grant relief." (Mot. at 6.) Therefore, the Court should analyze the 12(b)(1) motion as a facial challenge. *See Wichansky*, 702 F. App'x at 560; *see also BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002) (treating 12(b)(1) motion as facial when movant, although not explicitly asking, confined jurisdictional challenge to allegations in complaint only).

## C. Burden of Proof on Affirmative Defenses

Illegality and related doctrines such as unclean hands are affirmative defenses for which Defendants bear the burden of proof. *Pacific Bell Directory v.*

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

*William Muhr, LLC*, 2007 WL 9702830, at *7 (C.D. Cal. Mar. 13, 2007); *Pfizer, Inc. v. Int'l Rectifier Corp.*, 545 F. Supp. 486, 537-38 (C.D. Cal. 1980) (defendant bore burden of proof on unclean hands defense in patent infringement action). A defendant may raise an affirmative defense for the first time in a motion for judgment on the pleadings only if the delay does not prejudice the plaintiff. *Owens v. Kaiser Found, Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

## IV.     DEFENDANTS' MOTION SHOULD BE DENIED

Defendants move to dismiss (1) for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(b)(3), and (2) for failure to state a claim upon which relief can be granted under Rules 12(c) and 12(b)(6). (Mot. at 7.) Defendants' motion should be denied for the reasons below.

### A. Defendants' 12(b)(1) Challenge Fails

Defendants challenge the sufficiency, not the truth, of Gene Pool's jurisdictional allegations. Thus, the 12(b)(6) standard applies to Defendants' facial attack on this Court's subject matter jurisdiction over this action. Accepting Gene Pool's allegations as true and drawing all reasonable inferences in its favor, Gene Pool's Complaints facially and adequately plead subject matter jurisdiction.

Defendants do not dispute that the Complaints—but for Defendants' assertion now of an illegality defense—facially allege subject matter jurisdiction. Defendants' assertion of an affirmative defense, like illegality now, does not strip this Court of its original subject matter jurisdiction. *Lifecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1360-61 (Fed. Cir. 2008) ("Subject matter jurisdiction does not fail simply because the plaintiff might be unable to ultimately succeed on the merits."); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case.") (original emphasis).  Instead, "[d]ismissal for lack of subject-matter jurisdiction because of

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89 (quotation and citation omitted).

Consistent with this law, several courts, including this Court, have rejected attempts by defendants to argue that the illegality doctrine strips a federal court of federal-question subject matter jurisdiction. *See Greenwood v. Green Leaf Lab LLC*, 2017 WL 3391671, at *2–3 (D. Or. July 13, 2017); *Siva Enterprises v. Ott*, 2018 WL 6844714, at *5 (C.D. Cal. Nov. 5, 2018). In *Siva*, for example, this Court rejected defendants' attempt to use the illegality doctrine to undermine allegations properly pled in the complaint: "Defendants' argument fails because plaintiffs have indeed alleged a legally cognizable injury for purposes of Article III standing: that defendants misappropriated plaintiffs' proprietary business information and misused plaintiffs' identity and reputation." *Siva*, 2018 WL 6844714, at *5.

Thus, the Court should deny Defendant's 12(b)(1) motion.

## B. Defendants' 12(b)(6) and 12(c) Challenge Fails

Construing the Complaints in the light most favorable to Gene Pool and taking its factual allegations as true, Defendants fails to show "beyond doubt" that Gene Pool can prove no set of facts in support of its infringement claims that entitle it to relief. As discussed below, Defendants' 12(b)(6)/12(c) fails for many reasons. **First**, there is no bright-line rule, as Defendants urge, barring federal courts from adjudicating any "civil disputes involving violations of federal law or the distribution of proceeds therefrom" such as the patent infringement action here and Defendants' cited "illegality" cases involve distinctly different precedent, policy considerations, and facts than those here. **Second**, patent infringement is a tort and Defendants fail to show a connection between Gene Pool's alleged criminal misconduct required when asserting an illegality defense under tort law. **Third**, courts often consider policy considerations when applying an illegality defense and,

here, immunizing cannabis companies from patent infringement actions undercuts the public policy goals of both the Patent Act and the CSA by, at a minimum, encouraging cannabis companies to continue their violation of the CSA to maintain immunity to suit. **Fourth**, the statutory compensatory damages that Gene Pool seeks as remedy for Defendants' uninvited trespass on its patent rights do not violate or otherwise conflict with the CSA. **Fifth**, though the Court need not reach the issue to deny Defendants' motion, Defendants' conclusory allegations that Gene Pool's pre-litigation communications ensnared it in Defendants' violations of the CSA should be given minimal weight.

For these reasons, the Court should reject Defendants' 12(b)(6) and 12(c) challenges and deny their motion to dismiss.

1. ***No bright-line rule bars federal courts from adjudicating "civil disputes involving violations of federal law or the distribution of proceeds therefrom" and Defendants' other cited "illegality" cases are legally and factually distinguishable from this action***

Defendants' motion is premised the allegedly bright-line rule that "federal courts will not adjudicate civil disputes involving violations of federal law or the distribution of proceeds therefrom." (Mot. at 13; *see also* 6, 15, 16, 18.) But even cases Defendants cite in their Motion reject such a bright-line rule. *See, e.g.*, *In re CWNevada LLC*, 602 B.R. 717, 746-47 (2019) ("But bankruptcy courts, like all courts, are required to consider the circumstances of each case rather than routinely dismissing entire swaths of petitions and requests filed by parties seeking legal relief. Public confidence and the integrity of the court [] require no less."); *Sensoria, Ltd. Liab. Co. v. Kaweske*, 581 F. Supp. 3d 1243, 1258 ("*Sensoria III*") (D. Colo. 2022) ("[T]he mere fact that unlawful activity is involved in some way does not automatically foreclose contract relief; this includes contracts that might bear some relationship to marijuana."). And many other federal cases not cited by Defendants stress that there is no hard-and-fast rule, absolute bar, or automatic

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

prohibition of relief actions involving cannabis. *See, e.g.*, *Sensoria, Ltd. Liab. Co. v. Kaweske*, 548 F.Supp.3d 1011, 1026 (D. Colo. 2021) ("*Sensoria II*") ("The mere fact of marijuana's involvement does not by itself automatically preclude Sensoria from seeking redress. As the Court recognized in the prior ruling, case law suggests no such hard-and-fast rule. . . . Defendants must do more than simply point to the marijuana aspects of the enterprise to have the claims dismissed."); *Polk v. Gontmakher*, 2021 WL 1090739, at *2 (W.D. Wash. Mar. 22, 2021) ("recent case law involving cannabis-related business contracts does not espouse an absolute bar to the enforcement of such contracts"); *Burton v. Maney (In re Burton)*, 610 B.R. 633, 637-38 (B.A.P. 9th Cir. 2020) (noting that "the mere presence of marijuana near a bankruptcy case does not automatically prohibit a debtor from bankruptcy relief").

All of Defendants' other cited "illegality" cases are legally and factually distinguishable from a patent litigation action sounding in tort, like this action. For example, Defendants' cited bankruptcy cases (Mot. at 9-10) primarily involve debtors involved in ongoing CSA violations or concerns with trustees violating the CSA through administration of the cannabis-related assets of a bankruptcy estate. *In re Arenas*, 514 B.R. 887, 892 (Bankr. D. Colo. 2014) (trustee could not take possession of debtor's cannabis business); *In re Medpoint Mgmt.*, 528 B.R. 178, 188 (Bankr. D. Ariz. 2015) (same); *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 805 (Bankr. D. Colo. 2012) (debtor in possession's continuing operations violated CSA); *In re Johnson*, 532 B.R. 53, 57 (Bankr. W.D. Mich. 2015) (debtor in possession enjoined from violating CSA).

Defendants cited contract dispute cases (Mot. at 10-13) applied the illegality doctrine with consideration of the policy goals and remedies particular to contract law.  *Sensoria III*, 581 F. Supp. At 1258 ("As a general rule, a court will not compel the performance of a contract term that requires violating a law. . . . Nor may a court enforce a contract term that is contrary to public policy."); *J. Lilly, LLC v.*

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

*Clearspan Fabric Structures Int'l, Inc.*, 2020 WL 1855190, at *11 (D. Or. Apr. 13, 2020) ( in contract dispute "Plaintiff seeks compensation for profits that it would have earned from the manufacture, distribution, or dispensation of marijuana but for Defendants' breach of contract, breach of warranty, and negligence."); *Gopal v. Luther*, 2022 WL 504983, at *4 (E.D. Cal. Feb. 18, 2022) (in contract dispute "[t]his court cannot enforce an ownership interest in a marijuana business or order damages derived from the cultivation and sale of marijuana."); *Bart Street III v. ACC Enters., LLC*, 2018 WL 4682318, at *5 (D. Nev. Sept. 27, 2018) (in contract dispute "the Court cannot order any remedy that permits Defendants to directly use Plaintiff's funds for cannabis cultivation or to gain ownership in Defendant's cannabis business"); *Tracy v. USAA Cas. Ins. Co*, 2013 WL 928186, at *13 (D. Haw. Mar. 16, 2012) (in contract dispute "to require Defendant to pay insurance proceeds for the replacement of medical marijuana plants would be contrary to federal law and public policy . . . .").

Besides cases from the 1800s having little direct relevance to the action here (Mot. at 9), Defendants cite only two "illegality" cases not involving bankruptcy or contract disputes but neither is comparable on the facts and law to this action. (Mot. at 12-13.) In *Shulman v. Kaplan*, this Court applied the illegality doctrine to RICO and Lanham Act claims. *Shulman v. Kaplan*, 2020 WL 7094063, at *2 (C.D. Cal. Oct. 29, 2020). Unlike here, the *Shulman* Court found that "[p]laintiff's damages under RICO are inextricably intertwined with their cannabis cultivation" and that "any relief would remedy Plaintiffs' lost profits from the sale, production, and distribution of cannabis." *Id*. The *Shulman* Court also rejected Lanham Act claims based on plaintiff's use of a mark for its own cannabis products. *Id*. ("[W]hen a mark is used for cannabis products, the Lanham Act does not recognize the user's trademark priority or any derivative claims"). In *Kiva Health Brands LLC v. Kiva Brands Inc,* the court applied the illegality doctrine to the narrow issue of whether the defendant in a trademark infringement could assert as a defense the prior use of

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

the trademark on a cannabis product sold in violation of the CSA. 402 F. Supp. 3d 877, 887-91 (N.D. Cal. 2019).

In sum, Defendants misstate the law with their bright-line rule and provide the Court with little relevant guidance on applying the illegality doctrine in the context of a patent litigation. For these reasons alone, the Court could deny Defendants' motion.

### 2. *Defendants cannot show the nexus between Gene Pool's alleged misconduct and the controversies at issue in this action required when asserting a illegality defense in tort actions like a patent infringement action*

Nearly every case that Defendants cite in their Motion involves the application of the illegality defense in the context of either a bankruptcy or contract actions. (Mot. 9-13.)  But these types of actions involve different facts, precedent, remedies, and policy than the patent infringement action at issue here. In the context of a tort action, which includes a patent infringement action, application of the illegality doctrine and related defenses requires showing a nexus or connection between the plaintiff's misconduct and the actual controversies at issue in the action. Defendants do not, and cannot, make this showing. Even if they were not baseless and conclusory allegations, Gene Pool's alleged entanglement in Defendants' violations of the CSA caused by Gene Pool sending unanswered, pre-litigation communications to Defendants had no relation to the infringement, validity, and enforceability issues present in this action.

Patent infringement is a strict liability tort created and defined by federal statute. *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1355 (Fed. Cir. 2007) ("Patent rights are statutory rights, and a claim for patent infringement sounds in tort."); *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("[P]atent infringement is a strict liability tort."). And the Federal Circuit has stressed that tort law rather than contract law better describes

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

the context of a patent infringement suit:

> The analogy of a patent to a contract may appear to some extent to be an appropriate way of describing the circumstances surrounding the issuance of a patent. . . . The analogy of a patent to a contract is not useful, however, in the context of a patent infringement suit. Patents are not contracts per se and patent infringement actions have never been viewed as breach of contract actions. Patent infringement has often been described as a tort. In a patent infringement suit, the inventor sues a competitor for infringing upon his right to exclude.

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 984-85 (Fed. Cir. 1995).

Courts, including this Court, have often looked to tort law to inform their understanding of the application of common law in a patent infringement action. *In re EMC Corp.*, 677 F.3d 1351, 1357 n.1 (Fed. Cir. 2012) ("To determine when claims against different alleged patent infringers do satisfy the transaction-or-occurrence prong of Rule 20, it is appropriate to look at joinder of defendants in other tort cases because '[p]atent infringement is a tort.'") (quotation and citation omitted); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 2004 WL 7333730, *3 (C.D. Cal. Mar. 15, 2004) (looking to tort law to understand imposition of personal liability for patent infringement on person in a control position because "[p]atent infringement is a tort.") (citation omitted); *Wheel Pros, LLC v. Performance Tire*, 2017 WL 6017292, at *4 (C.D. Cal. Apr. 24, 2017) ("Purposeful availment is most often used in contract suits, and purposeful direction is most often used in tort suits. . . . Because trademark and patent infringement claims arise in tort, the Court applies the purposeful direction analysis.") (citations omitted).

Defendants discuss no case involving the application of the illegality defense in the context of a tort action, let alone a patent infringement action. Instead, Defendants merely note in passing that "Illegality can bar a tort claim" without further explaining how illegality is applied in the tort context and how that may

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

differ from the bankruptcy or contract context. (Mot. at 11.) The case Defendants cite in support of illegality barring a tort claim—a case that in fact held that the illegality defense ***could not*** bar the tort claim at issue there—shows that the illegality defense operates much differently in the tort context. *See Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 206-07 (E.D.N.Y.) (denying defendant's motion for leave to amend to add an illegality defense against plaintiff's tort claim based on plaintiff's allegedly illegal activities).  For example, the *Mischalski* court explains that in a tort action there must be a showing of proximate causation between plaintiff's misconduct—including criminal conduct—and the injuries at issue:

> The mere commission of an offense, however, does not bar a plaintiff from seeking redress from an injury suffered while engaging therein. Rather, an individual's legal violation precludes an action for injuries cause by a tortfeasor only when plaintiff's own criminal conduct was a contributing proximate cause of his or her injuries.

*Mischalski*, 935 F. Supp. At 206 (quotation omitted). And the *Mischalski* court found that "the fact that plaintiff may have been working illegally . . . . was not a proximate or contributing cause of plaintiff's injuries." *Id*.

Neither the Supreme Court nor the Federal Circuit has directly addressed the illegality defense or doctrine in the context of patent litigation.  But the Ninth Circuit has noted in the context of copyright infringement actions that "the defense of illegality or unclean hands is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 990-91 (9th Cir. 2009) (quotation omitted). And the Supreme Court has stressed the need to show causation with the unclean hands defense, which like the illegality doctrine looks at the plaintiff's misconduct. *See, e.g.*, *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933) (unclean hands bars a plaintiff from seeking relief "only where some

OPP. TO MOTION TO DISMISS BASED ON ILLIGALITY DOCTRINE

unconscionable act of [the plaintiff] has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation" thus courts "do not close their doors because of [a] plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.").

Although the illegality doctrine and unclean hands are distinct defenses, they share a causation or relation requirement. Thus, unclean hands cases may further assist the Court in applying the illegality doctrine in this action, especially since unclean hands defenses appear much more often in patent infringement actions. For example, this Court in at least two patent infringement actions rejected attempts by defendants to apply unclean hands without a showing that the plaintiff's misconduct connected to the controversy at issue. In *Magnesystems, Inc. v. Nikken, Inc.*, this Court rejected an "unprecedented stretch" of the unclean hands doctrine noting that plaintiff's alleged misconduct—willfully infringing defendant's patents—had nothing to do with the infringement or validity of the patent asserted by plaintiff, "the 'matters' at issue in this case." 933 F. Supp. 944, 953-54 (C.D. Cal. 1996). The Court also noted that plaintiff's and defendant's trespass on each other's property were distinct: "One trespass does not cancel the other. Both trespasses can be remedied." *Id.* In *Broadcom Corp. v. Emulex Corp.*, this Court held that the defendant had failed to show a "direct nexus" between plaintiff's alleged misconduct—stock option backdating—to "acquisition of the patents in suit." 2011 WL 13135066, at *2 (C.D. Cal. Aug. 11, 2011). To accept defendant's argument, "the direct nexus requirement would be obliterated" and plaintiff's misconduct was simply not the "controversy in issue." *Id.*

Applying the law discussed above—which requires that an illegality defense applied in a tort case must have a nexus or connection with the controversy at issue—Defendants have shown no nexus or connection between Gene Pool's

1  alleged misconduct, even if true, and the controversies at issue in this action. Again
2  putting aside the conclusory nature of these allegations as well as the unfairness in
3  tarring Gene Pool with Defendants' own CSA violations, Defendants' assertion that
4  Gene Pool attempted to conspire to violate the CSA and attempted to commit
5  money laundering through its pre-litigation communications and licensing offers to
6  Defendants has no bearing on the issues in this case: (1) whether the Defendants
7  infringe the Asserted Patents, (2) whether the Asserted Patents are invalid, or (3)
8  even whether the '209 patent is unenforceable for inequitable conduct. Thus, the
9  illegality defense cannot be used here to defeat Gene Pool's claims, and the Court
10 should deny Defendants' motion to dismiss on this basis as well.

11  ### 3. *Public policy favors allowing patent infringement actions to proceed against infringers violating the CSA*

13  In applying the illegality defense and related doctrine like unclean hands,
14 courts commonly weigh the policy concerns underlying the application of the
15 defenses. *See, e.g.*, *Shulman*, 2020 WL 7094063, at * 2 (reviewing "public policy"
16 considerations in applying illegality defense); *Sensoria III*, 581 F. Supp. 3d at
17 1258-59 (consideration of public policy factors such as "relative moral culpability,
18 deterrence of illegal conduct, avoidance of unjust windfalls and forfeitures, and
19 how best to give effect to the public policy" in contract context "ensures that
20 enforcement of a contract will not be detrimental to the public good" such that the
21 illegality doctrine "applies when the contrary public policy clearly outweighs the
22 interest in contract enforcement.").

23  Here, the policy considerations underlying patent law and enforcement of
24 patent rights through private civil litigation do not conflict with the policy
25 considerations underlying the CSA. Immunizing cannabis companies from patent
26 infringement actions undermines the policy objectives of both Patent Act and the
27 CSA, devaluing protected property rights while perversely incentivizing cannabis
28 companies to remain in violation of the CSA to preserve their immunity to patent

infringement actions. *See Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349-350 (9th Cir. 1963) ("In the interests of right and justice the court should not automatically condone the defendant's infractions because the plaintiff is also blameworthy, thereby leaving two wrongs unremedied and increasing the injury to the public.").

The law recognizes important policy goals related to the patent system in general as well as individual patent rights. The United States patent system promotes "Progress of Science and the useful Arts" by rewarding innovation with a lawful but temporary monopoly. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730 (2002). Thus, "the patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology." *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 63 (1998). Furthermore, "patents ... have long been considered a species of property." *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999); *see also* 35 U.S.C. § 261 ("[P]atents shall have the attributes of personal property."). As property, the Supreme Court has held that patents are not "any less protected against physical appropriation than real property" under the Fifth Amendment. *Horne v. Dep't of Agriculture*, 576 U.S. 350, 359 (2015). And the Supreme Court has also held that patents "are surely included within the 'property' of which no person may be deprived by a State without due process of law" *Fla. Prepaid*, 527 U.S. at 642. As private property rights worthy of protection, the Supreme Court has instructed courts to exercise caution "before adopting changes [in law] that disrupt the settled expectations of the inventing community." *Festo*, 535 U.S. at 739.

Patent law grants a patent holder a statutory right to sue for infringement through a private action. 35 U.S.C. § 281. This right to sue is viewed as a constitutional right of great public importance. *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1317 (Fed. Cir. 2013) ("[P]atentees have a constitutional

right to petition the government to enforce or otherwise vindicate [their property] rights."); *Precision Instrument Mfg. Co. v. Auto. Maintenance Machinery Co.*, 324 U.S. 806, 815-16 (1945) ("The possession and assertion of patent rights are issues of great moment to the public").

The purpose and policy of the CSA is to protect the public from the harmful effects of various drugs, including cannabis. But courts have noted that federal policy supporting enforcement of the CSA against cannabis has been erratic and the policy rationale for enforcing the CSA against cannabis has waned. *Green Earth Wellness Center, LLC v. Atain Specialty Insur. Co.*, 163 F. Supp. 3d 821, 832 (D. Col. 2016) ("[T]he nominal federal prohibition against possession of marijuana conceals a far more nuanced (and perhaps even erratic) expression of federal Policy" and the "Court will not attempt nor summarize, the conflicting signals that the federal government has given regarding marijuana regulation and enforcement since 2009"); *Mann v. Gullickson*, 2016 WL 6473215, at *4 (N.D. Cal. Nov. 2, 2016) (finding that since 2012 "[f]ederal policy has only become less clear" regarding enforcement of the CSA against state-sanctioned cannabis); *KUSH, Inc. v. Van Vranken*, 2020 WL 8371452, at *5 (D. Nev. June 19, 2020) ("current public policy does not discourage marijuana companies from entering into contracts in states where marijuana is legal, thus undermining the policy rationale against enforcing "illegal" contracts in this context.").

Against, this backdrop of competing policy rationales, Defendants propose to apply the illegality doctrine here such that the policy goals of both the Patent Act and the CSA are undermined. First, granting any company in violation of the CSA immunity to patent infringement actions, discourages inventors from seeking patents on inventions that could be stolen without remedy thereby undercutting promotion of the sciences and useful arts. Inventor's expectations in the value of their patents are decreased. Second, immunizing cannabis businesses from all patent infringement actions (and presumably from any other action seeking

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

monetary tort damages in federal court) perversely rewards and incentivizes these businesses to not only violate patent rights but also the CSA. Businesses that start or continue to violate the CSA can infringe patent rights with impunity; businesses that stop violating the CSA lose that immunity. Finally, there is no conflict between the policy goals Patent Act and the CSA. Awarding statutory damages against Defendants for their trespass on Gene Pool's patents neither obligates nor forces Defendants to continue to violate the CSA. Instead, it only requires Defendants to pay for their past infringement of Gene Pool's patent rights and commit to pay ongoing compensatory damages if they choose to continue to practice the patents.

In sum, the policy goals of the Patent Act and the CSA are best served by allowing a patent holder in Gene Pool's position to maintain a patent infringement action against infringers, like the Defendants, relying on their own violation of the CSA to shield them patent infringement liability. This result upholds all the public benefits of a strong patent system and avoids incentivizing infringers to start or continue to violate the CSA in order to maintain immunity to patent suit. Thus, the Court should reject, on policy grounds, Defendant's use of the illegality doctrine for their personal gain rather than the public good. *See Globaltex Group Ltd. v. Trends Sportswear Ltd.*, 2010 WL 1633438, at *4 (E.D.N.Y. Apr. 21 2010) ("Defendants' invocation of the illegality doctrine is unpersuasive in that they seek to use the doctrine as a sword for personal gain rather than a shield for the public good.") (quotation and citation omitted). On this basis, the Court should again deny Defendants' motion.

### 4.   *Remedy of compensatory damages for Defendants' infringement neither violates nor conflicts with the CSA*

Gene Pool seeks in this action statutory compensatory damages for Defendant's infringement:

> "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no

19                      Case No. 5:21-cv-01328-JWH-SHK

event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."

35 U.S.C. § 284. As compensatory damages, these statutory damages seek to place the patent holder a financial position but for infringer's actions. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1579 (Fed. Cir. 1992) ("In patent cases, as in other commercial torts, damages are measured by inquiring: had the tortfeasor not committed the wrong, what would have been the financial position of the person wronged?").

Courts interpret the compensatory damages allowed under 35 U.S.C. § 284 expansively. *See Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc) ("[T]he language of the statute is expansive rather than limiting. It affirmatively states that damages must be adequate, while providing only a lower limit and no other limitation."). Thus, the correct measure of damages in a patent litigation is based on a highly case-specific and fact-specific analysis. *See Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996) ("The adequacy of the damages measure depends on the circumstances of each case."); *Rite–Hite*, 56 F.3d at 1546 ("The general principles expressed in the common law tell us that the question of legal compensability is one 'to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent.'").

Other than their baseless, bright-line bar against federal courts distributing the proceeds of federal law violations, Defendants nowhere explains why granting Gene Pool the remedy of compensatory damages, including a reasonable royalty, for Defendants' infringement would somehow require the Court to violate the CSA. Federal courts can and do impose monetary damages on violators of criminal law, including in the RICO context. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 910 (3d Cir. 1991) ("Congress intended RICO's civil remedies to help eradicate organized crime from the social fabric by divesting the association of the fruits of

OPP. TO MOTION TO DISMISS BASED ON ILLIGALITY DOCTRINE

ill-gotten gains.") (quotations omitted). The correct measure of damages here will develop over the course of the litigation—including through expert discovery on damages after the close of fact discovery. It is premature to assume, as Defendants do, that these damages will assume the form of a remedy—out of the many possible ways compensatory damages can be structured—that violates the CSA.

In sum, with a patent infringement action limited to federal court and remedies likely limited to a reasonable royalty, declining subject matter jurisdiction here would immunize Defendants from suit and completely foreclose Gene Pool's ability to bring suit against Defendants and other cannabis companies operating in violation of the CSA.

## 5. *Little weight should be given to Defendants' allegations of criminal conduct based on Gene Pool's protected pre-litigation communications*

Defendants argue that Gene Pool's pre-litigation communications giving notice of infringement and offering to license the Asserted Patents is "an attempt to profit from federally illegal activity" that constitutes "conspiracy, an attempt to conspire, or aiding or abetting a violation of the CSA, and attempted money laundering." (Mot. at 15-16.) The Court need not consider these baseless and unsupported allegations given that, as explained above, this alleged misconduct has no relation to infringement, invalidity, and inequitable conduct issues of this case. In fact, this Court in *Siva* summarily rejected a similar attempt by defendants to cast a Lanham Act claim as involving "the aiding and betting" the commission of a crime as "a mischaracterization of plaintiffs' allegations." *Siva*, 2018 WL 6844714, at *5. The Court should similarly reject Defendants' allegations of Gene Pool's criminal conduct as a mischaracterization and distortion of Gene Pool's patent infringement allegations. To the extent the Court does consider these allegations, the Court should (1) give little weight to Defendants' conclusory attorney argument offered in support of these allegations, (2) recognize the protections on and importance of pre-litigation communications under federal law, and (3) understand

that the infringing systems at issue here may very well fall under an exception of the CSA.

First, the Court should give little weight to these allegations at the motion to dismiss stage, especially to deprive a patent holder of any remedy on its patents. Defendants provide only conclusory attorney argument, not admitted evidence, on the elements of these criminal allegations.  For example, Defendants neither explain nor prove how Gene Pool's notice of infringement and licensing offer would be considered conduct that "aids, abets, counsels, commands, induces or procures" Defendants' violations of the CSA under 18 U.S.C. § 2. (Mot. at 8, 16.)  The threat of an infringement action should deter, not encourage, the use of the infringing systems and methods to process cannabis. And entering into a license to compensate Gene Pool for Defendants' patent infringement would have imposed a cost on Defendants and reduced profitability—neither of which encourages the use of infringing systems and methods. Similarly, promotional money laundering requires proof of conducting a financial transaction involving "proceeds of some form of unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C.S. § 1956(a)(1)(A)(i). Defendants' fail to justify how Gene Pool threatening suit and seeking compensation for Defendants' unsanctioned trespass on Gene Pool's patent rights—thereby imposing a risk and cost on Defendants—promotes Defendants' carrying on of unlawful activity.

Second, federal law protects a patent holder's pre-litigation communications, recognizing the important role these communications play in protecting the patent holder's right to sue, promoting pre-litigation resolution, and in defining the substantive rights of a patent holder. For example, First Amendment policy considerations protect a patent holder's pre-litigation communications alleging patent infringement. *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1375-76 (Fed. Cir. 2004) (holding that "it would be anomalous and socially counterproductive to protect the right to sue but not the right to threaten

suit" and therefore "federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation.") *see also HVLPO2, LLC v. Oxygen Frog, LLC*, 2017 WL 5244820, at *2 (N.D. Fl. June 16, 2017). Courts also promote pre-litigation communication as supporting the desirable societal benefit of avoiding litigation. *See, e.g.*, *Proxyconn Inc. v. Microsoft Corp.*, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("Pre-litigation attempts at resolution are especially desirable in patent cases, which are often expensive and thus resolved by settlement."); *Callwave Communications LLC v. AT & T Mobility LLC*, 2014 WL 5363741, at *1 (D. Del. Jan. 28, 2014) ("[t]here is a benefit to society if [a] matter is resolved without a suit" and a pre-suit notice letter could lead "the patent holder and the asserted infringer [to] exchange information, and the asserted infringer might then take a license, or the patent holder might learn of reasons why suit should not be filed."). Finally, the importance of pre-litigation communication is reinforced by substantive law that requires such communication to give notice of infringement for starting the damages period and pleading pre-litigation willful infringement. Criminalizing a patent holder's attempts to resolve a dispute without litigation because the infringer is involved in criminal conduct—especially on the sparse record here—would undermine these protections, policy goals, and the substantive rights.

Finally, the Asserted Patents relate to Defendants' use of extraction systems that, if anything, would be considered "drug paraphernalia," which is defined under the CSA to include "any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing ... a controlled substance." 21 U.S.C. § 863(d). But there are exemptions to the illegality of "drug paraphernalia" under the CSA. *See, e.g.*, 21 U.S.C. § 863(f)(1) (exempting "any person authorized by State ... law to manufacture, possess, or distribute such items"). In the patent litigation action *Lifted Limited, LLC v. Novelty Inc.*, a district

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

court denied defendant's motion to dismiss for lack of subject matter jurisdiction based on the illegality doctrine by relying on one of these exceptions to the CSA's prohibitions against drug paraphernalia. 2021 WL 4480566, at *1-2 (D. Col. Sept. 30, 2021). The *Lifted Limited* defendants argued that the asserted design patent covered illegal drug paraphernalia and as a result "enforcing plaintiff's patent protections would be in furtherance of an illegal act" and thus "barred by the illegality doctrine." *Id*. at *2. Similar to Defendants' arguments here, the defendant argued that the "illegality doctrine prevents a federal court from adjudicating a dispute over the 'fruits of a criminal enterprise.'" *Id*. at *2. Noting that the defendant provided "no support for the use of this doctrine either in the patent context—particularly a situation where there is validly issued patent—or in the Tenth Circuit generally," the court held that it "need not resolve the applicability of the illegality to this case" because the light holder covered by the patent fell under one of the exceptions to the CSA's prohibitions against drug paraphernalia. The Defendants here are authorized under California or Oregon state law to "possess" machines used to manufacture cannabis products, including the infringing extraction systems at issue here. *See, e.g.*, CAL. HEALTH & SAF. CODE §§§ 11362.5, 11362.7, 11357, 11358.6.  Gene Pool's licensing efforts relating to systems that, at best, would not likely be prohibited under the CSA should not entangle Gene Pool in Defendants' other criminal conduct under the CSA. *See U.S. v. Assorted Drug Paraphernalia Valued at $29,627.07*, 2018 WL 6630524, at *8 (D.N.M. Dec. 19, 2018) ("Congress intended to shield from prosecution those persons who were 'authorized by [law] to manufacture, possess, or distribute [drug paraphernalia].'"). At a minimum, whether the Accused Systems "constitute drug paraphernalia is a factual question that cannot be resolved at the motion-to-dismiss stage." *Republic Tech. (NA), LLC v. BBK Tobacco & Foods*, LLC, 262 F. Supp. 3d 605, 608 (N.D. Ill. 2017); *United States v. Assorted Drug Paraphernalia*, 90 F.Supp.3d 1222, 1229 (D.N.M. 2015) (denying summary judgment on forfeiture

OPP. TO MOTION TO DISMISS BASED ON ILLEGALITY DOCTRINE

claim on the ground that genuine dispute of material fact as to whether scales and other items were drug paraphernalia within the meaning of § 863(d)).

In sum, the Court should disregard or appropriately minimize the evidentiary value of Defendants' allegations of criminal conduct for purposes of denying Defendants' motion to dismiss.

## V. CONCLUSION

For the reasons stated above, Gene Pool respectfully requests that the Court deny Defendants' motion to dismiss on all grounds.

Dated: September 16, 2022                    Respectfully submitted,

                                             **SPEARHEAD LEGAL LLP**
                                             Ryan R. Owens
                                             Kristopher M. Dawes
                                             Andrew J. Fossum


                                     By:   /s/ Ryan R. Owens
                                           Attorneys for Plaintiff GENE POOL
                                           TECHNOLOGIES, INC.

OPP. TO MOTION TO DISMISS BASED ON ILLIGALITY DOCTRINE