1  Timothy L. Alger (Cal. Bar No. 160303)
2  EMERGE LAW GROUP
   100 Spectrum Center Drive, Suite 900
3  Irvine, California 92618
   Telephone: 949-936-2610
4  tim@emergelawgroup.com
5
6  James R. Gourley (TX Bar No. 24050679 (Admitted Pro Hac Vice))
   CARSTENS & CAHOON LLP
7  13760 Noel Rd., Suite 900
   Dallas, Texas 75240
8  Telephone: 972-367-2001
   gourley@cclaw.com
9
10
   Attorneys for Defendants
11 COASTAL HARVEST, LLC and
   ANM, INC.
12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| GENE POOL TECHNOLOGIES, INC., | Case No.:  5:21-cv-01328-JWH-SHK<br>Consolidated with 2:21-cv-08756 |
| Plaintiff,<br>v. | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON THE ILLEGALITY DOCTRINE** |
| COASTAL HARVEST, LLC,<br><br>Defendant. | Hon. John W. Holcomb |
| AND CONSOLIDATED MATTERS | Hearing<br>Date: October 7, 2022<br>Time: 9:00 a.m.<br>Ctrm: 9D, 9th Floor |

16
17
18
19
20
21
22
23
24
25
26
27
28

---

**1**

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## I.     Introduction.

Gene Pool's business model is focused on trying to profit from the manufacture and sale of federally illegal cannabis.  Try as it might, Gene Pool cannot escape this unassailable fact.  Gene Pool's attempt to distinguish itself from the plaintiffs in cases involving disputes between cannabis companies lacks credibility because Gene Pool repeatedly describes itself as a part of the federally illegal cannabis industry: in its complaint[1], on its website[2], and in its press releases[3].  And if the Court still has questions after reading the motion papers, it can and should ask Gene Pool to further describe its cannabis-related activities.

If Gene Pool is correct that it can share in the revenues of federally illegal cannabis oil extraction without violating the Controlled Substances Act ("CSA") or federal money laundering statutes, it would represent a sea change in federal law.  Gene Pool wants to have its cake and eat it too; it wants to profit directly from federally illegal manufacturing systems and processes but avoid the problems such businesses have with access to the federal court system.  This loophole does not exist.  Gene Pool's claims are foreclosed by many analogous district court cases discussed in Defendants' opening brief, and none of the cases cited by Gene Pool requires a different result here.

Gene Pool's appeal to public policy also rings hollow.  Gene Pool's attempts to profit from activity that violates the CSA bars any public policy argument it may have otherwise had. Unless and until there is a change in the Controlled Substances Act or federal money laundering statutes, public policy in the United States does not favor a company that is attempting to profit from the manufacture or sale of a Schedule I substance.

---

[1] *See, e.g.*, Dkt. 1 at para. 3.

[2] *See* http://genepooltechnologies.com

[3] *See* https://www.businesswire.com/news/home/20210809005869/en/Gene-Pool-Technologies-Files-Patent-Infringement-Actions-Against-Halo-Collective-Subsidiaries-Coastal-Harvest-and-ANM

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**II.   There is a nexus between Gene Pool's federally illegal activity and the allegations of infringement that are central to this case.**

Gene Pool did not dispute Defendants' allegations that it attempted on multiple occasions through "pre-litigation communications" to persuade Defendants to pay Gene Pool a royalty based on the extraction of cannabis oil. It instead derided them as "conclusory attorney argument" and justified them as protected by the First Amendment and as socially beneficial. (Dkt. 82 at pp. 22-23). Gene Pool also made the incredible allegation that these communications accusing Defendants of infringement had "no relation to the infringement … issues present in this action." (Dkt. 82 at p. 12). The fact is, Gene Pool demanded that Defendants pay it a cut of the proceeds of federally illegal activities. That is an attempt to engage in money laundering under federal law, an attempt to profit directly from violations of the CSA, and this Court cannot facilitate such activity.

Gene Pool also alleges that its royalty demands did not involve an intent to promote the carrying on of Defendants' alleged violations of the CSA. This allegation is not credible because even in its response brief, Gene Pool could not abandon its request for an ongoing royalty. It still expects this Court to require "Defendants to pay for their past infringement of Gene Pool's patent rights and commit to pay ongoing compensatory damages if they choose to continue to practice the patents." (Dkt. 82 at p. 19). Gene Pool is not a competitor of Defendants. It is a patent assertion entity that only makes money when others infringe its patents. Any rational actor in that circumstance would hope that infringement continues so that it can continue to receive a royalty going forward.

**III.   Based on the cases cited by Gene Pool, and Gene Pool's response to the cases cited by Defendants, dismissal is required.**

Gene Pool made little attempt to distinguish the *Sensoria* and *In re Medpoint Mgmt.* cases discussed in detail in Defendants' opening brief. In fact, *In re Medpoint Mgmt.* was a bankruptcy court decision that strongly suggested that the

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1 IP licensing revenues collected by the debtor in that case "could be seized or
2 forfeited, and that [debtor] could be or could have been guilty of facilitation of a
3 crime under the CSA." *In re Medpoint Mgmt.*, 528 B.R. 178, 185 (Bankr. D. Ariz.
4 2015).   Instead of trying to distinguish it, Gene Pool merely cited it as one
5 bankruptcy case among many in which the federal court refused to administer the
6 estate of a debtor in the cannabis industry.  *Sensoria* also received almost no
7 discussion in Gene Pool's response brief.  These cases are the closest on point and
8 counsel in favor of dismissal here.

9     Gene Pool cited the *Siva* case in several parts of its response brief as
10 supporting its position.  The parties in *Siva* were business consultants and did not
11 make or sell cannabis products.  This allowed the *Siva* court to find no conflict
12 between the CSA and the plaintiff's claims for misappropriation of business
13 information because "the dispute in this case does not involve the actual
14 production or sale of cannabis." *Siva Enters. v. Ott*, No. 2:18-cv-06881-
15 CAS(GJSx), 2018 U.S. Dist. LEXIS 223854, at *14 (C.D. Cal. Nov. 5, 2018).  At
16 the risk of stating the obvious, Gene Pool's claims and its request for damages in
17 this case are inextricably tied to the production or sale of cannabis.

18     Further, as described above, if there is a nexus requirement for the illegality
19 doctrine to apply in this case, the nexus here is impossible to miss.  Gene Pool
20 wants a royalty from the production or sale of federally illegal cannabis products.
21 It is difficult to imagine a more direct link between the plaintiff's claims and the
22 federally illegal activity than that present in this case.

23 **IV.  Public policy does not favor allowing Gene Pool to maintain its claims**
24     **in this Court.**

25     Public policy embodied in federal law discourages involvement in the
26 manufacture, sale, or distribution of controlled substances, notwithstanding the
27 decisions by California, Oregon and many other states to legalize adult and
28 medicinal use of cannabis.  As the Ninth Circuit recognized in a different context:

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1    Anyone in any state who possesses, distributes, or manufactures
2    marijuana for medical or recreational purposes (or attempts or
3    conspires to do so) is committing a federal crime.   The federal
4    government can prosecute such offenses for up to five years after they
5    occur.   *See* 18 U.S.C. § 3282.   Congress currently restricts the
6    government from spending certain funds to prosecute certain
7    individuals.  But Congress could restore funding tomorrow, a year from
8    now, or four years from now, and the government could then prosecute
9    individuals who committed offenses while the government lacked
10   funding.

11   *United States v. McIntosh*, 833 F.3d 1163, 1179 n.5 (9th Cir. 2016).

12   As described above, Gene Pool is not an innocent victim that happens to
13   have been harmed by a company in the cannabis industry.  Gene Pool is itself in
14   the cannabis industry.  Like other cannabis businesses, Gene Pool requires visitors
15   to its website to verify that they are at least 21 years old before allowing access to
16   the site, and on its home page Gene Pool describes itself as follows: "At the
17   forefront of technological innovation for the cannabis industry".[4]

18   Gene Pool acquired these patents for the specific purpose of collecting
19   licensing revenues from cannabis companies.  If Gene Pool was in the business of,
20   for example, lavender oil extraction and was here attempting to enforce its patent
21   against a company in the cannabis industry, its public policy argument about
22   protecting innovation might carry some weight (though not dispositive weight).
23   But here, Gene Pool is open and notorious about its designs on the cannabis
24   industry, including "bringing modern market standards to cannabis-related patent
25   licensing."[5]

26   If Gene Pool is correct that these patents have applicability outside the

27   _____

28   [4] https://genepooltechnologies.com/
     [5] See http://genepooltechnologies.com

**5**

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

cannabis industry, seemingly nothing is preventing them from pursuing enforcement actions against parties engaged in federally legal activity.  This Court would not be taking any substantial right away from Gene Pool by granting Defendants' motion; it is simply not allowing Gene Pool to share in the revenue from activity that violates the CSA, which is entirely consistent with the current state of federal law and public policy.

Currently, federal law does not allow for the manufacture or sale of cannabis products, and it does not allow financial transactions involving the proceeds of such acts.  Cannabis companies are not even able to use federally insured banks.  How, then, can Gene Pool claim that public policy should encourage innovation and profits in a federally illegal industry?  The answer is that it does not, and it will not, unless and until Congress acts to change the law in this country.

**V.     Even if the extraction systems involved in this case are "drug paraphernalia" as Gene Pool argues, it would be irrelevant to this case.**

In a last-ditch effort to save its claims, Gene Pool raised a red herring argument alleging that the accused extraction systems are drug paraphernalia under 21 U.S.C. § 863, and that they fall under an exemption to illegality in subsection (f).  (Dkt. 82 at pp. 23-24).  But section 863(a) of Title 21 proscribes the following activities with respect to drug paraphernalia: "It is unlawful for any person (1) to sell or offer for sale drug paraphernalia; (2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or (3) to import or export drug paraphernalia."  Defendants are not accused of selling or offering for sale the extraction systems themselves, nor are they accused of transporting, importing, or exporting the extraction systems.  So none of the acts identified in (1), (2), or (3) are at issue in this case, which makes the question of whether the extraction systems fall under the exceptions in 21 U.S.C. § 863(f) irrelevant to this case.

Instead, Defendants stand accused of manufacturing cannabis oil using

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

extraction systems and methods that allegedly infringe Gene Pool's patents.  Gene Pool alleges that Defendants infringe the system claims through use of this extraction equipment and infringe the method claims by practicing the method steps of its patents.  This alleged activity implicates a different section of the CSA, which prohibits the "manufacture, distribut[ion], or dispens[ing], or possess[ion] with intent to manufacture, distribute, or dispense, a controlled substance[.]"  21 U.S.C. § 841(a)(1).  Gene Pool has identified no exception to Section 841 that would allow Gene Pool to share in the profit or revenue generated by those activities.

## VI. The Court should assure itself that it has subject matter jurisdiction over this dispute.

If the Court determines, based solely on the motion papers, that open questions remain about its subject matter jurisdiction, the Court should request additional information or hold an evidentiary hearing to gather all of the information it needs to make a decision.  Subject matter jurisdiction is a foundational, Constitutional question that needs to be answered before this lawsuit can move forward.  "The subject matter jurisdiction of the district court is not a waivable matter and may be raised at any time by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).  "[T]he district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In such a case, a court is "free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (*quoting Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

For example, if the Court believes that it requires more information about

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   Gene Pool's participation in the cannabis industry, Gene Pool could be questioned
2   about its activities at an evidentiary hearing.  In addition to describing Gene Pool
3   as "At the forefront of technological innovation for the cannabis industry," the
4   Gene Pool website also describes one of its services as "Leveraging world-class
5   expertise and partnerships with industry leaders to create and patent the next
6   generation of cannabis extraction."[6]  If the nature and extent of these activities,
7   and the source of Gene Pool's revenues, are relevant to the Court's decision, Gene
8   Pool could be questioned about them.

9         The age check on Gene Pool's website is alone enough to establish that it is
10  in the cannabis business.  Such age checks are generally only used by businesses
11  that deal in age-restricted goods, such as alcohol or cannabis.  If Gene Pool is not
12  in a business that involves age-restricted goods, why would it check whether
13  visitors to its website are over 21?

14        Gene Pool also issued a press release when this litigation was filed that
15  suggests that cannabis extraction companies developed the patents-in-suit: "These
16  patents were developed by cannabis-extraction pioneers who continue to work
17  closely with Gene Pool to license the patents."[7]  Gene Pool co-founder Sam
18  Bergstrom has posted a Gene Pool IP Licensing Brochure entitled "Building
19  Cannabis Tech," which confirms Gene Pool's active involvement in the cannabis
20  industry.[8]  The Court might wish to inquire about whether Gene Pool is obligated
21  to share any proceeds from its patent enforcement actions with the "cannabis-
22  extraction pioneers" that originally obtained these patents.

23        These and any other questions the Court may have would be appropriately
24  examined in an evidentiary hearing or additional briefing ordered by the Court.

25

26  [6] *Id.*
    [7] https://www.businesswire.com/news/home/20210809005869/en/Gene-Pool-
27  Technologies-Files-Patent-Infringement-Actions-Against-Halo-Collective-
    Subsidiaries-Coastal-Harvest-and-ANM
28  [8] https://www.linkedin.com/feed/update/urn:li:activity:6951988599064080384/

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## VII. Conclusion.

Gene Pool cannot legally profit from the production or sale of federally illegal cannabis products.  The mere fact that Gene Pool is attempting to do so through a patent license does not change what it is doing, or whether this court has jurisdiction or can provide relief.  If this loophole existed, a federally illegal cannabis business could launder revenue through a patent licensing entity and completely shield it from federal legal scrutiny.  Such an outcome has no support within the Controlled Substances Act, the federal money laundering statues, or the criminal or civil case law of the federal court system.  This Court should not lend its aid to Gene Pool's desire for a cut of proceeds from the production of federally illegal cannabis.  It should dismiss this case.

DATED:  September 23, 2022          EMERGE LAW GROUP


By:/s/ *Timothy L. Alger*
          Timothy L. Alger
          EMERGE LAW GROUP
          100 Spectrum Center Drive, Suite 900
          Irvine, California 92618

          James R. Gourley
          CARSTENS & CAHOON LLP
          13760 Noel Rd., Suite 900
          Dallas, Texas 75240

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS