UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JOHN W. HOLCOMB, JUDGE PRESIDING

GENE POOL TECHNOLOGIES, INC., ) CERTIFIED TRANSCRIPT
                    Plaintiff, )
     vs.                       )
                               )  EDCV-21-01328-JVS
COASTAL HARVEST, LLC,          )
                    Defendant. )
-----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

November 22, 2022

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

1   APPEARANCES OF COUNSEL:

2   For the Plaintiff:

3   RYAN R. OWENS
    SPEARHEAD LEGAL, LLP
4   **620 Newport Center Drive, Suite 1100**
    **Newport Beach, CA  92660**
5   **(949) 409-8401**

6   For the Defendant:

7   JAMES R. GOURLEY
    **CARSTENS ALLEN GOURLEY, LLP**
8   **7500 Dallas Parkway, Suite 300**
    **Plano, TX  75240**
9   **(972) 367-2001**

10  TIMOTHY L. ALGER
    **EMERGE LAW GROUP**
11  1020 State Street, Suite 221
    **Santa Barbara, CA  93101**
12  (949) 322-4322

13

14

15

16

17

18

19

20

21

22

23

24

25

|  | 1 | SANTA ANA, CALIFORNIA; TUESDAY, NOVEMBER 22, 2022; 9:00 A.M. |
|  | 2 | THE CLERK:  Item No. 1, EDCV-21-01328-JWH, Gene |
|  | 3 | Pool Technologies, Inc., versus Coastal Harvest, LLC. |
| 09:00 | 4 | Counsel, beginning with the plaintiff, please |
| 09:00 | 5 | state your appearances for the record. |
| 09:00 | 6 | MR. OWENS:  Good morning, Your Honor.  This is |
| 09:00 | 7 | Ryan Owens representing plaintiff Gene Pool Technologies. |
| 09:00 | 8 | THE COURT:  All right.  Good morning, Mr. Owens. |
| 09:00 | 9 | MR. GOURLEY:  Good morning, Your Honor.  James |
| 09:00 | 10 | Gourley representing the defendant in this case. |
| 09:01 | 11 | THE COURT:  Mr. Gourley, good to see you. |
| 09:01 | 12 | MR. ALGER:  Good morning, Your Honor.  Timothy |
| 09:01 | 13 | Alger representing the defendant. |
| 09:01 | 14 | THE COURT:  So we're here on a scheduling |
| 09:01 | 15 | conference, and we'll get to that in a second.  There are |
| 09:01 | 16 | also pending two motions that I've taken under submission, |
| 09:01 | 17 | and I wanted to deal with those today so we can move forward |
| 09:01 | 18 | with the scheduling conference. |
| 09:01 | 19 | I issued the claim construction order on |
| 09:01 | 20 | October 23, and that was ECF 87.  But pending were |
| 09:01 | 21 | defendant's motion which I call the renewed motion to stay |
| 09:01 | 22 | pending IPRs, IPR review, and that was ECF 66.  And 67 was I |
| 09:02 | 23 | think some supplemental authority or additional exhibits, |
| 09:02 | 24 | corrected exhibits, something like that.  ECF 74 was a |
| 09:02 | 25 | Notice of Supplemental Authority.  75 was the opposition. |

09:02    1    77 was the reply.  ECF 80 is when I took the motion under

09:02    2    submission and vacated the hearing.  Then ECF 88 was a

09:02    3    Second Notice of Supplemental Authority.  So I've reviewed

09:02    4    all of that, and I'm prepared to rule.  I want to give you

09:02    5    that ruling so we could as I said move forward.

09:02    6            I'm going to deny the defendant's renewed motion

09:02    7    to stay litigation pending inter partes review.  I will note

09:02    8    that the defendant, Coastal Harvest, argues that a stay

09:02    9    is -- sorry, my notes are out of order.  Give me one second.

09:03    10            (Pause in proceedings)

09:03    11            THE COURT:  Coastal Harvest argues that a stay is

09:03    12    appropriate because the following petitions for inter partes

09:03    13    review have been filed by a third-party.  There's an IPR

09:03    14    petition with respect to the '203 patent, which was filed on

09:03    15    February 21 of this year and instituted on August 8.  There

09:03    16    was an IPR with respect to the '532 patent filed April 13,

09:03    17    and -- was this one instituted?

09:03    18            MR. GOURLEY:  Yes, Your Honor.

09:03    19            THE COURT:  That's what I thought, but my notes do

09:03    20    not reflect the date.  That was relatively recently, right?

09:04    21            MR. GOURLEY:  Yes.

09:04    22            THE COURT:  Okay.  And then the third IPR petition

09:04    23    with respect to the '751 patent was filed May 26, and an

09:04    24    institution decision is expected December 8.

09:04    25            MR. GOURLEY:  That one has been instituted as

| | | |
|---|---|---|
| 09:04 | 1 | well. |
| 09:04 | 2 | THE COURT:  That has been instituted. |
| 09:04 | 3 | MR. GOURLEY:  Yes. |
| 09:04 | 4 | THE COURT:  Okay.  When was that instituted? |
| 09:04 | 5 | MR. GOURLEY:  I believe October 31.  It's in one |
| 09:04 | 6 | of the Notices of Supplemental Authority that we filed. |
| 09:04 | 7 | THE COURT:  Okay.  Sorry, I missed that.  In any |
| 09:04 | 8 | event, all three IPR petitions have been granted, and |
| 09:04 | 9 | they've been instituted, correct? |
| 09:04 | 10 | MR. GOURLEY:  Yes. |
| 09:04 | 11 | THE COURT:  Okay.  Coastal Harvest explains that |
| 09:04 | 12 | the petitions were filed by a nonparty to this case, |
| 09:04 | 13 | ExtractionTek Sales, LLC, the manufacturer of the MeP 30 |
| 09:04 | 14 | equipment.  Underlying the plaintiff's infringement |
| 09:05 | 15 | allegations for the so-called Wasserman patents, the |
| 09:05 | 16 | petitions seek to invalidate every claim of the subject |
| 09:05 | 17 | patents. |
| 09:05 | 18 | "When determining whether a stay requested by an |
| 09:05 | 19 | alleged infringing party should be granted pending the |
| 09:05 | 20 | completion of inter partes review, district courts have |
| 09:05 | 21 | considered the following factors:  "(1) the stage of the |
| 09:05 | 22 | litigation; (2) whether a stay will simplify the issues; and |
| 09:05 | 23 | (3) whether a stay would unduly prejudice the non-moving |
| 09:05 | 24 | party."  And I'm quoting from the Star Envirotech, Inc., |
| 09:05 | 25 | case, 2013 WL 1716068. |

09:06   1          And there are other authorities for that

09:06   2   proposition, including Universal Electronics, Inc., 943

09:06   3   F.Supp.2d 1028.  Both of those cases are from this court,

09:06   4   the Central District.

09:06   5          With respect to the stage of litigation, Coastal

09:06   6   Harvest argues that this factor weighs in favor of a stay

09:06   7   because discovery is in the early stages; expert discovery

09:06   8   has not yet begun; the pleadings from the two consolidated

09:06   9   cases have not yet been consolidated, although that may not

09:06  10   be true now, right?

09:06  11          MR. GOURLEY:  I'm not sure, Your Honor.

09:06  12          THE COURT:  There's that Oregon case that was

09:06  13   consolidated into this case.  I just reviewed your

09:06  14   Rule 26(f) report, but that was relatively old.  In any

09:07  15   event, I'm just reciting what Coastal Harvest argued in its

09:07  16   papers.

09:07  17          The argument then was the Court has not yet issued

09:07  18   its Markman order, and a further scheduling order setting a

09:07  19   trial date has not been issued.  Gene Pool responded that

09:07  20   the stage of the litigation weighs against a stay because of

09:07  21   the significant work the parties and the Court have

09:07  22   completed to date.  And then Gene Pool recites that, and

09:07  23   that was even before I issued the claim construction order.

09:07  24          Gene Pool contended that Coastal Harvest

09:07  25   downplayed the level of resources expended because it

09:07  1   ignored the resources that would continue to be expended

09:07  2   between now and the completion of the PTAB proceedings.

09:08  3        I agree with Gene Pool that this factor weighs

09:08  4   against a stay in view of the significant resources that the

09:08  5   Court and the parties have expended thus far.  And, of

09:08  6   course, I talked about issuing the claim construction order

09:08  7   about a month ago.

09:08  8        The second factor is simplification of issues.

09:08  9   Coastal Harvest argues that the IPR proceedings could

09:08  10  significantly simplify the issues in this case because the

09:08  11  petitions challenge the validity of all asserted claims of

09:08  12  the Wasserman patents, which could eliminate Coastal Harvest

09:08  13  completely from the case.

09:08  14       Coastal Harvest also argues that the PTAB is

09:08  15  likely to institute all three petitions, which it did, given

09:08  16  the similarly of the claims across the Wasserman patents.

09:08  17  Coastal Harvest contends that if the Court issues the final

09:08  18  claim construction order, resources could be wasted if Gene

09:08  19  Pool later decides to amend any of the asserted claims

09:09  20  during the course of the IPR proceedings.  Coastal Harvest

09:09  21  also suggests that PTAB's statistics support granting a stay

09:09  22  because at least some claims are likely to be invalidated.

09:09  23       Gene Pool responds that Coastal Harvest's reliance

09:09  24  on PTAB statistics is misleading because it does not

09:09  25  consider the number of petitions that are not instituted.

09:09   1    Further, Gene Pool contends that any simplification is

09:09   2    speculative because the PTAB has not issued all of its

09:09   3    institution decisions.  Now, that's no longer applicable.

09:09   4    Coastal Harvest is not a party to the IPR petitions, so the

09:09   5    estoppel provisions that typically attach to IPR petitions

09:09   6    will not apply.  And Gene Pool makes the argument that even

09:09   7    if all IPRs are instituted, 15 of the 31 asserted claims in

09:10   8    this case are not raised in any of the petitions.

09:10   9        Now, although all three IPR's have been

09:10  10    instituted, I agree that simplification remains somewhat

09:10  11    speculative.  I find that this factor is neutral at best,

09:10  12    because the PTAB's final decisions would not implicate 15 of

09:10  13    the 31 asserted claims in this case, and Coastal Harvest is

09:10  14    not a party to the IPR petitions, so the estoppel provisions

09:10  15    that would typically result in streamlining or simplifying a

09:10  16    case are not available here.  I would cite the Document

09:10  17    Security Systems, Inc., case, 2018 WL 10670109, from the

09:10  18    Central District, March 26, 2018.

09:11  19        And then the third factor concerns undue influence

09:11  20    to the nonmoving party.  I conclude that this factor weighs

09:11  21    against a stay.  Although the parties are not direct

09:11  22    competitors, Gene Pool has demonstrated sufficient specific

09:11  23    prejudice that would likely arise from a lengthy delay in

09:11  24    this case in the form of fading witness memories.  Where as

09:11  25    is true here the nature of this case will make percipient

09:11  1    witness testimony more important given the lack of

09:11  2    documents, I'm not inclined to grant a stay.  Although

09:11  3    Coastal Harvest argues that any delay would be minimal, this

09:11  4    does not account for delay arising from the period between

09:11  5    institution decisions and final written decisions from the

09:12  6    PTAB and the conclusion of the PTAB proceedings through any

09:12  7    Federal Circuit appeal.

09:12  8          Therefore, I conclude that the stage of the case

09:12  9    and the prejudice factors weigh against a stay, and the

09:12  10   simplification factor is neutral.  Considering these three

09:12  11   factors, as well as the totality of the circumstances, I

09:12  12   decline to enter a stay at this point and deny the motion

09:12  13   ECF 66.

09:12  14         Let me turn to defendant's other pending motion,

09:12  15   the Motion to Dismiss Based on the Illegality Doctrine, ECF

09:12  16   76.  Here we have the motion ECF 76, the opposition ECF 82,

09:12  17   the reply 83, and 84 was the docket entry where I vacated

09:13  18   the hearing and took the motion under submission.  I'm going

09:13  19   to deny this motion as well.

09:13  20         Coastal Harvest argues that dismissal is

09:13  21   appropriate under Rule 12(b)(1) and 12(b)(6) because the

09:13  22   Court lacks jurisdiction.  Specifically, Coastal Harvest

09:13  23   contends that since the Complaint alleges that Coastal

09:13  24   Harvest engages in illegal marijuana-related activity and

09:13  25   should pay damages to Gene Pool from the proceeds of that

09:13  1    illegal activity, which itself would be a violation of the
09:13  2    Controlled Substances Act -- which I'll refer to as the
09:13  3    CSA -- and/or money-laundering, the Court may not hear the
09:13  4    dispute.  That's the contention.
09:13  5            Coastal Harvest also asserts that regardless of
09:14  6    legality under state law, cannabis remains illegal under
09:14  7    federal law and "federal courts do not get involved in civil
09:14  8    disputes over the proceeds of illegal activity."
09:14  9            Therefore, Coastal Harvest contends that the
09:14  10   illegality doctrine, which is premised upon the maxim that
09:14  11   "no Court will lend its aid to a party who founds his claim
09:14  12   for redress upon an illegal act" -- that's citing a case
09:14  13   called The Florida, 101 U.S. 37 from 1879.  Coastal Harvest
09:14  14   contends that that doctrine bars Gene Pool's lawsuit here.
09:14  15           Citing examples from bankruptcy cases and other
09:14  16   types of cases, Coastal Harvest argues that "federal courts
09:14  17   consistently refuse to hear cases that would necessarily
09:15  18   require them to distribute the proceeds of illegal
09:15  19   activity."  Coastal Harvest contends that, because Gene Pool
09:15  20   seeks a reasonable royalty derived from the alleged illegal
09:15  21   conduct of Coastal Harvest, and because Gene Pool's
09:15  22   allegations make it an aider and abettor or co-conspirator
09:15  23   in the alleged conduct, this Court lacks jurisdiction to
09:15  24   hear Gene Pool's claims.  Coastal Harvest further argues
09:15  25   that Gene Pool's allegations fail to state a claim because

09:15  1    of illegality.

09:15  2           Gene Pool responds that Coastal Harvest

09:15  3    misconstrues precedent to concoct a non-existent,

09:15  4    bright-line rule that "federal courts will not adjudicate

09:15  5    civil disputes involving violations of federal law or the

09:15  6    distribution of proceeds therefrom."  Gene Pool argues that

09:16  7    by asking the Court to adopt such an overbroad rule, Coastal

09:16  8    Harvest seeks to immunize cannabis companies from patent

09:16  9    infringement suits or from lawsuits alleging any federal law

09:16  10   violation.

09:16  11          Gene Pool contends that the motion should be

09:16  12   denied because Coastal Harvest fails to demonstrate a nexus

09:16  13   between the alleged illegal conduct, that is, cannabis

09:16  14   activities, and the claims at issue here, that is, the

09:16  15   claims for relief at issue here, which are for patent

09:16  16   infringement.

09:16  17          Gene Pool also suggests that public policy

09:16  18   "disfavors immunizing cannabis companies from patent

09:16  19   infringement liability and thereby not only undermining of

09:16  20   the policy goals of the Patent Act and CSA, but also

09:16  21   perversely incentivizing these cannabis companies to

09:17  22   continue their CSA violations to preserve their immunity to

09:17  23   suit."  Further, Gene Pool contends that "the statutory

09:17  24   compensatory damages that Gene Pool seeks as remedy for

09:17  25   defendant's uninvited trespass on its patent rights do not

09:17  1   violate or otherwise conflict with the CSA."

09:17  2        I'm not going to review the Rule 12(b)(1) and

09:17  3   12(b)(6) standards because those are well-known to the

09:17  4   parties.

09:17  5        With respect to marijuana-related civil actions,

09:17  6   Coastal Harvest has provided no authority addressing the

09:17  7   application of the so-called illegality doctrine in the

09:17  8   patent infringement context generally, or in the context

09:17  9   where the illegality arises from the defendant's (as opposed

09:17  10  to the plaintiff's) alleged illegal conduct; that is, where

09:18  11  a defendant seeks to use its own illegal conduct as a shield

09:18  12  to alleged tortious conduct.

09:18  13       Now, admittedly, "the Ninth Circuit and Supreme

09:18  14  Court have not decided whether a federal district court may

09:18  15  adjudicate disputes related to cannabis transactions fairly,

09:18  16  given the state of federal law."  And I'm quoting from the

09:18  17  Gopal verses Luther case, 2022 WL 504983.  That's from the

09:18  18  Eastern District of California, February 18, 2022.

09:18  19       But other cases do provide some guidance.  At

09:18  20  least one district court in the Tenth Circuit has declined

09:18  21  to address whether the illegality doctrine applies in a

09:18  22  marijuana-related context.  And I'm thinking of the Lifted

09:19  23  Limited, LLC, case, 2021 WL 4480566.  That's from the

09:19  24  District of Colorado, September 30, 2021.

09:19  25       Relatedly, this Court has "observed that" -- this

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:19  1   Court, that is, within the Central District -- that another
09:19  2   Central District Court has, quote, "observed that authority
09:19  3   in this area is sparse, particularly with respect to the
09:19  4   applicability of federal civil laws to state-sanctioned
09:19  5   cannabis businesses."  And that's the Siva Enterprises case
09:19  6   against Ott, 2018 WL 6844714, Central District, November 5,
09:19  7   2018.
09:19  8          In Siva, because the plaintiffs were "not seeking
09:20  9   a remedy that would compel either party to violate the
09:20 10   Controlled Substances Act," and the dispute did not involve
09:20 11   "the actual production or sale of cannabis," the Court did
09:20 12   "not find a conflict between plaintiffs' claims and the CSA
09:20 13   and declined to dismiss plaintiffs' claims due to lack of
09:20 14   standing."
09:20 15          Seeking to apply those cases and the doctrine
09:20 16   pertaining to marijuana-related civil actions in this case,
09:20 17   I conclude that Coastal Harvest has not demonstrated that
09:20 18   the illegality doctrine should bar Gene Pool's claims in the
09:21 19   face of "validly issued" patents.  Again, I'm thinking of
09:21 20   the Lifted Limited case.
09:21 21          First, unlike in the Shulman against Kaplan case,
09:21 22   which was 2020 WL 7094063, Gene Pool does not seek damages
09:21 23   based on its own cultivation or sales of marijuana.  The
09:21 24   parties agree that the patents do not mention cannabis or
09:21 25   marijuana.  Rather, they relate more generally to extracting

09:21   1   oils or compounds from plants.

09:21   2           Second, based on the allegations in the Complaint,

09:21   3   I do not conclude that Gene Pool seeks damages based upon

09:21   4   Coastal Harvest's cultivation or sales of marijuana.

09:22   5   Rather, the Complaint alleges infringement based upon

09:22   6   Coastal Harvest's extraction activities.  Specifically. Gene

09:22   7   Pool alleges that, quote:  "Coastal Harvest has used and

09:22   8   continues to use the ExtractionTek Solutions Modular

09:22   9   Extraction Platform 30 (MeP30) to extract products from

09:22   10  cannabis" and extract "solutes from cannabis material."  I'm

09:22   11  quoting from the Complaint I believe paragraphs -- I'm

09:22   12  looking at paragraph 6, paragraph 16, paragraph 27, and

09:22   13  paragraph 38.

09:22   14          Although the CSA prohibits possession with the

09:22   15  intent to distribute marijuana -- see, for example, 21 USC

09:23   16  Section 841(a)(1) -- Gene Pool's allegations do not set

09:23   17  forth a prima facie violation of the CSA for several

09:23   18  reasons.  Extracting solutes from cannabis material, which

09:23   19  is what Gene Pool alleges Coastal Harvest does to infringe,

09:23   20  is not necessarily illegal.  For example, the CSA definition

09:23   21  of "marijuana" excludes hemp, which includes low-THC

09:23   22  varietals of cannabis and low-THC cannabis derivatives such

09:23   23  as the non-psychoactive cannabinoid cannabidiol, also known

09:24   24  as CBD.

09:24   25          The Complaint's allegations concerning extraction

09:24  1   of cannabis material are broad enough to include types of

09:24  2   cannabis material excluded from the CSA.

09:24  3           As another example, in every fiscal year since

09:24  4   2015, Congress has included provisions in an appropriations

09:24  5   rider that bars the Department of Justice from taking

09:24  6   certain actions that interfere with state laws legalizing

09:24  7   medical marijuana under state law.  See, for example, the

09:24  8   Consolidated Appropriations Act, 2016, Public Law No.

09:24  9   114-113, Section 542, 129 Stat. 2242 at 2332-33, from 2015.

09:25  10  Courts, including the Ninth Circuit, have interpreted the

09:25  11  rider to prohibit certain federal prosecutions of private

09:25  12  individuals or organizations that produce, distribute, or

09:25  13  possess marijuana in accordance with state medical marijuana

09:25  14  laws.

09:25  15          Specifically, the Ninth Circuit acknowledged that

09:25  16  the rider "prohibits the federal government" from

09:25  17  "preventing the implementation of those specific rules of

09:25  18  state law that authorize the use, distribution, possession,

09:25  19  or cultivation of medical marijuana."  I'm quoting there

09:25  20  from United States against McIntosh, 833 F.3d 1163, 1178,

09:25  21  (Ninth Circuit 2016).

09:25  22          Extending this logic to potential prosecutions,

09:26  23  the Ninth Circuit ruled that when the DOJ prosecutes

09:26  24  individuals for marijuana-related activity that complies

09:26  25  with the relevant state law, this, quote, "prevents them" --

09:26  1  that is, the states -- "from implementing their laws that

09:26  2  authorize the use, distribution, possession, or cultivation

09:26  3  of medical marijuana by prosecuting individuals for use,

09:26  4  distribution, possession, or cultivation of medical

09:26  5  marijuana that is authorized by such laws."  And that's at

09:26  6  page 1187.  It does so by, quote, "preventing the states

09:26  7  from giving practical effect to their laws providing for

09:26  8  non-prosecution of individuals who engage in the permitted

09:26  9  conduct," same page.

09:26  10          Accordingly, the Ninth Circuit explained, quote:

09:26  11  "If DOJ wishes to continue such prosecutions, the relevant

09:27  12  defendants are entitled to evidentiary hearings to determine

09:27  13  whether their conduct was completely authorized by state

09:27  14  law," that is, they "strictly complied with all relevant

09:27  15  conditions imposed by state law on the use, distribution,

09:27  16  possession, and cultivation of medical marijuana."  And

09:27  17  that's page 1179.

09:27  18          Gene Pool's allegations in the Complaint

09:27  19  concerning extraction of cannabis material are broad enough

09:27  20  to include marijuana-related activities that are excluded

09:27  21  from prosecution under the CSA by the rider and controlling

09:27  22  case law interpreting it, and necessarily any alleged aiding

09:27  23  and abetting arising therefrom.  And they are arguably broad

09:27  24  enough to include marijuana-related activity that does not

09:27  25  provide a license to violate other federal law, namely,

09:28   1    Patent Act Section 271(a) prohibiting patent infringement.

09:28   2    In other words, that certain marijuana-related activity may

09:28   3    be deemed legal under federal law does not in and of itself

09:28   4    transform an unrelated federal cause of action with entirely

09:28   5    different goals (for example, protecting employees or

09:28   6    promoting innovation) into facilitating a crime.

09:28   7            Because I resolved the motion on the narrow

09:28   8    grounds that I just discussed, I need not reach the parties'

09:28   9    other broad contentions concerning, for example, the nexus

09:28   10   of Coastal Harvest's alleged illegal conduct to Gene Pool's

09:28   11   asserted claims.

09:28   12           I've considered all of the other arguments set

09:28   13   forth by the parties in the papers, and I conclude that none

09:29   14   changes the outcome.

09:29   15           Coastal Harvest has not shown that allowing Gene

09:29   16   Pool to proceed with this lawsuit would require or permit

09:29   17   Coastal Harvest to possess, cultivate, or distribute

09:29   18   marijuana in violation of the CSA, or to require Coastal

09:29   19   Harvest to violate the CSA.  Thus, Coastal Harvest's Rule

09:29   20   12(b)(1) jurisdictional challenge fails.  Because Coastal

09:29   21   Harvest's Rule 12(b)(6) challenge is premised on the same

09:29   22   allegations, it likewise fails.

09:29   23           For those reasons, I deny Coastal Harvest's Motion

09:29   24   to Dismiss based on the illegality doctrine, ECF 76.

09:29   25           All right, I wanted you to have those rulings.

09:29   **1**   The minute order memorializing this hearing will recite that

09:30   **2**   for the reasons stated in open court those two motions are

09:30   **3**   denied.

09:30   **4**          All right, let's move to the scheduling

09:30   **5**   conference.  I've reviewed your Rule 26(f) report, your

09:30   **6**   updated -- let me get it in front of me -- your updated

09:30   **7**   proposed schedule.  You called it Second Joint Proposed Case

09:30   **8**   Schedule, ECF 91.

09:30   **9**          A couple questions.  It appears you already had a

09:30   **10**  settlement conference, correct?

09:30   **11**         Okay.  I see people nodding.

09:30   **12**         MR. OWENS:  Mediation, Your Honor.

09:30   **13**         THE COURT:  Okay.  In your Rule 26(f) report I

09:30   **14**  think it was you said a magistrate judge or ADR -- the

09:30   **15**  Court's ADR panel.  Do I need to set an ADR proceeding?  It

09:31   **16**  appears to me you've already done that.  Do I need to order

09:31   **17**  you to one?

09:31   **18**         MR. OWENS:  I don't believe so, Your Honor.  We

09:31   **19**  are still working with the mediator.  We had the initial

09:31   **20**  meeting, and we have a schedule for continued discussion.

09:31   **21**  So I think that's in process, and we've already met that

09:31   **22**  deadline.

09:31   **23**         THE COURT:  Okay.  So two things.  I'm not going

09:31   **24**  to order another ADR proceeding.  That having been said,

09:31   **25**  obviously, I'd like to assist you in any way I can in

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:31   1   resolving this case consensually.  So if you need any help
09:31   2   in terms of getting, for example, a magistrate judge
09:31   3   involved for free, I'm happy to facilitate that.  If you
09:31   4   want help in that regard, just reach out to my CRD, and I'll
09:31   5   do what I can to set that up.
09:32   6           It does not have to be the magistrate judge
09:32   7   assigned to this case, although Judge Kewalramani was a
09:32   8   patent lawyer himself, and he is very good at settling
09:32   9   cases.  But if for some reason you wanted some other
09:32  10   magistrate judge, let me know.  I'll do what I can to help
09:32  11   you resolve the case in that regard.  But again, I'm not
09:32  12   going to tamper with it because you have a process underway.
09:32  13           In your Rule 26(f) report, you talked about the
09:32  14   Oregon case.  That's all been resolved and consolidated.
09:32  15   There's no other case out there that's going to jump in and
09:32  16   disrupt any schedule that I set, correct?
09:32  17           MR. OWENS:  Correct.
09:32  18           THE COURT:  Okay.  Do I need to set deadlines for
09:32  19   revised infringement contentions or revised invalidity
09:33  20   contentions or a deadline for an advice of counsel defense
09:33  21   as I sometimes do in patent cases or -- I know you have
09:33  22   already done the first two in connection with the claim
09:33  23   construction process.  You haven't thought about that?
09:33  24           MR. GOURLEY:  Yeah.
09:33  25           MR. OWENS:  Your Honor, I think we would need to

09:33  1    discuss it potentially at least on those types of deadlines
09:33  2    to see if they are necessary and where they would fit in.  I
09:33  3    don't know about proposing something without discussing it
09:33  4    first.
09:33  5              THE COURT:  So here's what I am going to do.  I'm
09:33  6    not going to set those deadlines, and I hope I haven't
09:33  7    thrown a monkey wrench in the works by even suggesting
09:33  8    revisions to those things.  All that having been said, if
09:33  9    you reach some agreement and you want an order memorializing
09:33  10   it, file an appropriate stipulation.  I think you've done
09:34  11   that before in this case, and that works great.  If somebody
09:34  12   wants to file a motion, I'm happy to address that.  But
09:34  13   bottom line is for the time being I'm not going to set any
09:34  14   additional what I'll call patent-related dates.
09:34  15             Okay, let's talk about the schedule itself.
09:34  16   Plaintiff's proposed schedule seemed a little tight to me.
09:34  17   On the one hand, I like moving cases along and having
09:34  18   quicker dates.  On the other hand, defendant's proposed
09:34  19   schedule is still relatively fast calling for a trial next
09:34  20   October, you know, 11 months from now.  That seems pretty
09:34  21   reasonable given where we are in this case with the claim
09:34  22   construction order entered, and you're about to embark on
09:34  23   discovery.  So I think I'm going to adopt defendant's
09:35  24   proposal, but I'm happy to listen to the plaintiff.
09:35  25             Any major push back on that?

09:35    1             MR. OWENS:  I wouldn't say major push back, Your

09:35    2    Honor.

09:35    3             THE COURT:  Any minor push back?

09:35    4             MR. OWENS:  I think the only thing that we'll note

09:35    5    is, you know, we've been progressing with our discovery

09:35    6    since the claim construction hearing and making progress on

09:35    7    that; whereas, the defendant has really not done anything

09:35    8    during that time period.

09:35    9             THE COURT:  Well, they had a couple of motions

09:35   10    that had merit, and I thought about them carefully.  So I

09:35   11    guess I don't blame them too much for that.

09:35   12             MR. OWENS:  I think that's really just our own

09:35   13    concern.  But we agree with Your Honor that it's a fairly

09:35   14    quick proposed schedule, and we can certainly work with it

09:35   15    if necessary.  We're just seeking to move things on as

09:36   16    quickly as possible, but we would be fine with something

09:36   17    that's a little, you know, more extended if Your Honor

09:36   18    prefers that.

09:36   19             THE COURT:  I think so.  And I mean the first

09:36   20    point you made was the defendant hasn't taken discovery yet.

09:36   21    Well, that's shame on defendant.  The schedule when I issue

09:36   22    it will be the schedule and, you know, they'll need to

09:36   23    comply with it.

09:36   24             MR. OWENS:  Okay.

09:36   25             THE COURT:  I guess your point was they shouldn't

09:36   1    be rewarded for not having done discovery and get a longer

09:36   2    schedule.  It's only two months -- a little less than two

09:36   3    months longer.  You're right.  You make a good point.  But

09:36   4    as I said, on the other hand, they did file those two

09:36   5    motions which could have, you know, resulted in me not

09:36   6    issuing a schedule at all.

09:36   7              MR. OWENS:  Okay, Your Honor.  That's fair.

09:37   8              THE COURT:  All right.  So I'll adopt defendant's

09:37   9    proposed schedule.

09:37   10             And, Madam Clerk, just so it's easy for you to

09:37   11   reference, I'm looking at ECF 91.  So I'll recite all these

09:37   12   dates in chronological order.

09:37   13             Fact discovery cutoff, February 17, 2023.

09:37   14   Deadline for initial designation of expert witnesses,

09:37   15   March 17, 2023.  Deadline for designation of rebuttal expert

09:37   16   witnesses, April 14, 2023.  All discovery cutoff including

09:37   17   hearing of discovery motions, May 19, 2023.  Deadline for

09:37   18   filing dispositive motions, June 16, 2023.

09:37   19             And I'll note here that this is -- I'm going to

09:38   20   give you the proposed -- I'm going to adopt your proposed

09:38   21   schedule for -- briefing schedule on dispositive motions,

09:38   22   which differs a little bit from the local rules, and that's

09:38   23   fine.  Please also note that my current standing order has

09:38   24   additional procedures concerning dispositive motions.

09:38   25             Madam Clerk, if we haven't, let's enter a revised

09:38     1    standing order in this case that updates those procedures.

09:38     2              THE CLERK:  Yes, Your Honor.

09:38     3              THE COURT:  Counsel, do you know what I'm talking

09:38     4    about?

09:38     5              MR. OWENS:  Not specifically.

09:38     6              THE COURT:  Okay.

09:38     7              MR. GOURLEY:  I do remember reading something

09:38     8    about that but not specifically.

09:38     9              THE COURT:  So you'll see it in the revised

09:38    10    standing order, or you can just look online on my web page

09:38    11    on the court's website.

09:38    12              In short, in all candor, I've pushed off some of a

09:38    13    lot of the work on the parties to prepare a joint statement

09:39    14    and a joint exhibit list.  So the so-called joint exhibit

09:39    15    list will be a compendium of all of the evidence that both

09:39    16    parties rely on in connection with a summary judgment

09:39    17    motion.  And the revised standing order goes into some

09:39    18    detail, but basically you shove everything, all your

09:39    19    declarations, exhibits, whatever other deposition

09:39    20    transcripts -- you put them all in one document for ease of

09:39    21    reference.

09:39    22              So I can go to one document, and you'll tell me

09:39    23    what page it's on, and it'll be right there.  I won't have

09:39    24    to be flipping through a dozen different declarations, and,

09:39    25    you know, there's seven Exhibit 2's.  Well, which Exhibit 2

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:39  1    is this?  Anyway, that's the purpose of the joint exhibit

09:39  2    list.

09:39  3            And then the joint statement, again, is a

09:39  4    compendium of all of the facts that the moving party, of

09:40  5    course, will say are material but not in dispute and then

09:40  6    the evidence in support of that.  Then if the opposing party

09:40  7    says, well, no, there is a dispute, a citation to the

09:40  8    evidence demonstrating that there is a dispute, and then any

09:40  9    additional facts that the opposing party wants to add saying

09:40  10   that they're disputed that are relevant to a disposition of

09:40  11   the motion.

09:40  12           This is all laid out in the revised standing

09:40  13   order.  It should be clear.  If it's not, you know, seek

09:40  14   guidance.  I think it'll be clear.

09:40  15           In any event, back to the briefing schedule for

09:40  16   dispositive motions, as I said, the deadline for filing is

09:40  17   June 16, 2023.  Deadline for responses -- that is,

09:41  18   oppositions -- would be three weeks later, July 7, 2023.

09:41  19   Deadline for replies in support, July 14, 2023.  That's a

09:41  20   one-week gap.  And then two weeks for the hearing.  The

09:41  21   hearing will be on July 28, 2023.  Deadline for a hearing on

09:41  22   motions in-limine, June 29, 2023.  Final pretrial

09:41  23   conference, October 6, 2023.  That will at 1:00 p.m.  And

09:41  24   jury trial, October 23, 2023, at 9:00 a.m., a four-day jury

09:41  25   trial.

09:41  1            MR. OWENS:  Your Honor, for the deadline for a
09:41  2  hearing on motions in-limine, I believe you said June 29,
09:41  3  2023, but I think it's September.
09:41  4            THE COURT:  It is.  If I said that, I misspoke.
09:41  5  It's September 29, 2023.  Thank you.
09:42  6            As I said, I am adopting the defendant's proposal.
09:42  7  So a minute order will state that, and we'll probably issue
09:42  8  a separate scheduling order that also has these dates.
09:42  9            All right, what else do we need to accomplish in
09:42  10  this case?
09:42  11            MR. GOURLEY:  Your Honor, I have a couple of
09:42  12  questions about the Motion to Dismiss if that's okay.
09:42  13            THE COURT:  Please, yes.
09:42  14            MR. GOURLEY:  So did I understand correctly that
09:42  15  we won't be anticipating a written decision, that it will be
09:42  16  just sort of like a transcript?
09:42  17            THE COURT:  Correct.  In all candor, I had it just
09:42  18  about ready to go, but dotting the i's and crossing the t's
09:42  19  takes time.  I both wanted to save chambers time and get you
09:42  20  the decision today, so that's why I issued it as an oral
09:42  21  ruling.  So order the transcript if you want all that.
09:43  22            MR. GOURLEY:  We very much appreciate hearing your
09:43  23  decision on it.  That clarifies a lot of things.  But did
09:43  24  you see the potential for any set of facts to change your
09:43  25  mind, like, for example, you mentioned this rider that

09:43    1    prohibits prosecution of medical marijuana companies.  What

09:43    2    if it turns out that my clients have never had a medical

09:43    3    license and all they've ever done is recreational, or if the

09:43    4    facts develop where we don't do hemp?  This is only about

09:43    5    THC.  I mean, is there any, like, factual development that

09:43    6    could perhaps support a motion that would be granted, or is

09:43    7    this --

09:43    8            THE COURT:  So let me say it this way.  A party

09:43    9    can challenge subject matter jurisdiction at any time.  So

09:43   10    I'm not inviting a Motion for Reconsideration by any means,

09:43   11    but the law is the law.  If I don't have subject matter

09:44   12    jurisdiction, anybody can raise it at any time, and the

09:44   13    arguments that I hear you making go to that issue.  I'm not

09:44   14    prejudging anything and, again, not inviting a Motion for

09:44   15    Reconsideration, but --

09:44   16            MR. GOURLEY:  Okay.

09:44   17            THE COURT:  The law is what it is in terms of

09:44   18    subject matter jurisdiction.

09:44   19            MR. GOURLEY:  Okay.  Thank you.

09:44   20            THE COURT:  You said you had a couple of

09:44   21    questions.

09:44   22            MR. GOURLEY:  I think that was two or three.  I

09:44   23    think, you know --

09:44   24            THE COURT:  All right.  What else do we need to

09:44   25    accomplish in this case?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:44  1              MR. OWENS:  I think that puts us on track, Your

09:44  2    Honor.

09:44  3              THE COURT:  Okay.

09:44  4              MR. GOURLEY:  Yeah, I think that's good for us.

09:44  5              THE COURT:  All right.  Counsel, thank you very

09:44  6    much for coming in.  I very much prefer -- is this the first

09:44  7    time I've seen you in person?

09:44  8              MR. OWENS:  Yes, Your Honor.

09:44  9              THE COURT:  Well, it's good to see you in person.

09:44  10             MR. GOURLEY:  Same here.

09:44  11             THE COURT:  I very much prefer to do this in

09:44  12   person, particularly when I'm going to do something this

09:44  13   substantive.  It's just easier to interact with counsel, so

09:45  14   thank you.  I appreciate it.

09:45  15             If there's nothing else, I'm going to take a

09:45  16   recess until my 10:00 calendar.  Thank you.

09:45  17             (Whereupon, the proceedings were concluded.)

09:45  18                       *    *    *

10:02  19

10:02  20

10:02  21

10:02  22

10:02  23

10:02  24

10:02  25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

**CERTIFICATE**


         I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  January 4, 2023


                    /s/   Sharon A. Seffens  1/4/23
                    _____
                    SHARON A. SEFFENS, U.S. COURT REPORTER